**OWNER–OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC., et al., Plaintiffs,**

v.

**ARCTIC EXPRESS, INC. and D & A Associates, Ltd., Defendants.**

No. C297–CV–00750.

United States District Court,
S.D. Ohio,
Eastern Division.

March 3, 2000.

See also 192 F.3d 778.

James Burdette Helmer, Jr., Helmer Martins & Morgan, Cincinnati, OH, Paul D. Cullen, Sr., Gregory Michael Cork, Cullen & O'Connell, Washington, DC, for plaintiffs.

A. Charles Tell, Baker & Hostetler, Columbus, OH, for Defendants.

MARBLEY, District Judge.

## I. INTRODUCTION

This matter is before the Court on the Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted filed on September 5, 1997, and on Defendants' Motion to Dismiss Under Doctrine of Primary Jurisdiction filed on January 15, 1998. By Order dated August 17, 1998, this Court stayed this action pending the Defendants' appeal to the Sixth Circuit. On appeal, this case was transferred to the Eighth Circuit Court of Appeals for consolidation with three other cases.

The Eighth Circuit issued the opinion of *Owner–Operator Independent Drivers Association, Inc. v. New Prime, Inc.*, 192 F.3d 778 (8th Cir.1999), on August 10, 1999, and denied the petition for review of this case. By Order dated October 13, 1999, the Eighth Circuit denied the Petition for Rehearing and for Rehearing En Banc.

The Plaintiffs allege that the Lease Agreements they entered into with the Defendants violate the Motor Carriers Act, 49 U.S.C. §§ 14101–02 and 14704, and the Regulations promulgated under the Act, 49 C.F.R. Part 376. This matter is now before the Court on both of the Defendants' Motions to Dismiss.

## II. FACTS

The following facts are based on the Plaintiffs' Complaint. The Plaintiff, Owner–Operator Independent Driver's Associ-

ation, Inc. ("OOIDA"), is a business association comprised of individuals and entities who own and operate motor vehicle equipment. The three Plaintiffs, Carl Harp, Garvin Keith Roberts and Michael Wiese, ("Members"), are individuals who have entered into a Lease Purchase Agreement with Defendant, D & A Associates, Ltd. ("D & A"), and a Motor Vehicle Lease Agreement with Defendant, Arctic Express, Inc. ("Arctic"). Arctic is a regulated motor carrier engaged in the business of providing transportation services to the shipping public. D & A is a non-carrier company engaged in the business of leasing truck tractor units, with the option to purchase, to independent owner-operators. D & A and Arctic are under common ownership and control.

Owner-operators are small business men and women who own or control truck tractors used to transport property on the country's highways. Owner-operators either transport commodities exempt from Department of Transportation ("DOT") Regulations or, as independent contractors, lease or provide their equipment and services to motor carriers who possess the legal operating authority under DOT regulations to enter into contracts with shippers to transport property. The relationship between independent truck owner-operators and regulated carriers is set forth in an agreement between the parties regulated by DOT.[1] *See* 49 U.S.C. § 14102; 49 C.F.R. pt. 376.

Under the contract between D & A and Members, the Independent Contractor Motor Vehicle Lease Agreement, ("Lease Purchase Agreement"), Members lease from D & A, with the option to purchase, truck tractor units. Under this Lease Purchase Agreement, Members are obligated to make weekly equipment rental payments to D & A and are also obligated to make payments to a maintenance fund based on mileage. This Agreement is not

directly regulated by the Motor Carriers Act.

Arctic and Members entered into a "Independent Contractor Motor Vehicle Lease Agreement," ("Lease Agreement"), whereby each Member leased a truck unit and the services of a qualified driver to Arctic. This Lease Agreement is subject to the terms of 49 C.F.R. Part 376.

Defendants, through the Affidavit of Steven R. Russi, Executive Vice President of Defendants Arctic and D & A, acknowledge that the Members have entered into separate Agreements with D & A and Arctic. Before the D & A and Arctic Agreements were executed, the Members were given an orientation program where the terms and conditions of each Agreement were explained; the details of the individual Member's financial obligations were discussed; and the amount and circumstances of each monetary deduction from Member's settlements were disclosed and reviewed. The Member's acceptance of the terms of the Agreement was established when each individual Member placed his or her initials at the end of the Agreement. Each of the Plaintiffs in this case initialed in the appropriate space at the end of the Agreement.

Under the Lease Purchase Agreement between D & A and Members, each individual Member leased a motor vehicle and was required to make weekly truck rental and maintenance payments at the rate of 9¢ per mile. The maintenance payments were collected in a "maintenance fund." Arctic deducted the rental and "maintenance fund" payments directly from the Member's compensation on a weekly basis.

The maintenance fund balances were refundable if the lease ran its term, or if the lease was terminated before the end of the specified term, when the Members exercised their purchase option. The fund bal-

---

1. In 1995, the Interstate Commerce Commission ("ICC") transferred the regulation of motor carrier functions to the Department of Transportation ("DOT"), and to the Surface Transportation Board ("STB"). *See* 49

U.S.C. § 13501. The Federal Highway Administration, ("FHWA"), is within the DOT and administers and enforces regulations concerning lease agreements between motor carriers and owner-operators.

ance was not refundable if the lease was terminated mid-term without the Member exercising his or her purchase option. If the lease was terminated mid-term, the maintenance fund balance was applied to the cost of reconditioning and repairing the vehicle for future use. None of the Members in the present case exercised his purchase option and therefore his maintenance fund balance was not refunded to him under the D & A Agreement.[2]

When the commercial driver's licenses of two of the Members, who are Plaintiffs to this suit, were canceled or suspended, they notified Arctic and their equipment leases were terminated.[3] The third Member voluntarily terminated his equipment lease with Arctic. The Plaintiffs could have hired other drivers for the vehicles they leased from D & A; however, they did not, and as a result their Lease Purchase Agreements with D & A were terminated before the end of the specified lease term, and their maintenance fund monies were not returned to them.

The Plaintiffs are seeking monetary damages and declaratory and injunctive relief, for themselves and on behalf of other similarly situated independent truck owner-operators, that arise from being deprived of their escrow funds and other funds deposited with the Defendants during the term of their Lease Agreements.

### III. STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide that when a motion to dismiss brought under Rule 12(b)(6) includes "matters outside of the pleading," that the motion should be treated as one for summary judgment under Rule 56(c). FED. R. CIV. P. 12(b); *see also Greenberg v. Life Ins. Co.*, 177 F.3d 507 (6th Cir.1999) (finding that attached illustrations were outside the pleadings but that the insurances policies in question were not); *McCottry v. Run-*

*yon*, 949 F.Supp. 527, 528 n. 1 (N.D.Ohio 1996) (finding that attached affidavits and deposition transcripts converted the motion to dismiss a motion for summary judgment).

Here, the Defendants have submitted the affidavit of Steven Rossi in their Motion to Dismiss. In their Response, the Plaintiffs argued that the Defendant's Motion should be treated as one for summary judgment, and in their Reply, the Defendants agreed with this assertion. Therefore, the Defendants' Motions will be consolidated and treated as one for summary judgment under Federal Rule of Civil Procedure 56(c).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R.CIV.P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.*, 12 F.3d 1382, 1388–89 (6th Cir.1993). The nonmoving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339–40 (6th Cir.1993). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248,

---

**2.** Under the Arctic Agreement, an escrow account was established for each Member, and those funds have been returned to the Members together with a full accounting as required by the federal equipment leasing rules.

**3.** Federal Regulations preclude regulated carriers such as Arctic from using the services of any driver who does not have a valid commercial driver's license.

106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (summary judgment appropriate where the evidence could not lead a trier of fact to find for the non-moving party).

In evaluating such a motion, the evidence must be viewed in the light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *See Anderson*, 477 U.S. at 251, 106 S.Ct. 2505; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir.1995).

## IV. DISCUSSION

This case was stayed pending the Defendants appeal to the Sixth Circuit. On appeal, this case was transferred to the Eighth Circuit for consolidation with three other cases. In *Owner–Operator Independent Drivers Association, Incorporated v. New Prime, Inc.*, 192 F.3d 778 (8th Cir. 1999), the Eighth Circuit denied a petition to hear this case.

The statute interpreted in *New Prime* is at issue in the present case and provides:

(a) **In general.—**

(1) **Enforcement of order.**-A person injured because a carrier or broker providing transportation or service subject to jurisdiction under chapter 135 does not obey an order of the Secretary or the Board, as applicable, under this part, except an order for the payment of money, may bring a civil action to enforce that order under this subsection. A person may bring a civil action for injunctive relief for violations of sections 14102 and 14103.

(2) **Damages for violations.**-A carrier or broker providing transportation or service subject to jurisdiction under chapter 135 is liable for damages sustained by a person as a result of an act or omission of that carrier or broker in violation of this part.

49 U.S.C. § 14704(a)(1)-(2).

Also at issue in *New Prime*, and in this case, were the regulations promulgated pursuant to § 14702 of the Motor Carriers Act, 49 C.F.R. Part 376, which provide, in relevant part:

(i) *Products, equipment, or services from authorized carrier.* The lease shall specify that the lessor is not required to purchase or rent any products, equipment, or services from the authorized carrier as a condition of entering into the lease arrangement. The lease shall specify the terms of any agreement in which the lessor is a party to an equipment purchase or rental contract which gives the authorized carrier the right to make deductions from the lessor's compensation for purchase or rental payments.

(k) *Escrow funds.* If escrow funds are required, the lease shall specify:

(1) The amount of any escrow fund or performance bond required to be paid by the lessor to the authorized carrier or to a third party.

(2) The specific items to which the escrow funds can be applied.

(3) That while the escrow fund is under the control of the authorized carrier, the authorized carrier shall provide an accounting to the lessor of any transactions involving such fund . . . .

(5) That while the escrow fund is under the control of the carrier, the carrier shall pay interest on the escrow fund on at least a quarterly basis . . . .

(6) The conditions the lessor must fulfill in order to have the escrow fund returned. At the time of the return of the escrow fund, the authorized carrier may deduct monies for those obligations incurred by the lessor which have been previously specified in the lease, and shall provide a final accounting to the lessor of all such final deductions made to the escrow fund. The lease shall further specify that in no event shall the

escrow fund be returned later than 45 days from the date of termination. 49 C.F.R. § 376.12(i), (k)(1)-(6).

And, finally the facts of *New Prime* are similar to those of the present case. In *New Prime*, OOIDA filed a class action suit against New Prime, a registered motor carrier, and Success Leasing, Inc., its affiliate, alleging that provisions in Prime's lease agreement violated the Federal Highway Administration's ("FHWA") leasing regulations, specifically 49 C.F.R. § 376.12(i) and (k). The owner-operators argued that violations of the truth-in-lending regulations could be brought before a federal court, while New Prime argued that the primary remedy should be administrative and before the FHWA. *See id.* at 783.

The court found that § 14704(a)(1) authorizes civil actions to enforce FHWA orders, but does not authorize owner-operators to sue for violations of the truth-in-leasing regulations. *See id.* at 783.[4] The court further found that § 14704(a)(1) authorizes private actions for damages and injunctive relief to remedy some violations of the Motor Carrier Leasing Act and its regulations, and is not limited to enforcing agency orders. *See id.* at 784.[5] In reaching this conclusion, the court concluded that the FHWA's remedial jurisdiction was not exclusive. *See id.* at 785. The court did not address, however, whether violations of 49 C.F.R. § 376.12(i) and (k) could be brought under 14102(a), but found that this question was not within its jurisdiction. *See id.* at 784.

As for § 14704(a)(2), the court found that it was not connected to § 14704(a)(1), and that the subsection was not limited to enforcing agency orders. Instead, the court found that § 14704(a)(2) authorizes private parties to sue for damages resulting from carrier conduct in violation of the regulations promulgated under the section. *See id.* at 784. In conclusion, the court held that § 14704(a) authorizes private actions for damages and injunctive relief for *some* violations of the act and its regulations, but did not specify which violations authorized such private actions. *See id.* at 785.

In this case, the Plaintiffs allege that the lease agreements they entered into with the Defendants violate the Motor Carriers Act, 49 U.S.C. §§ 14101–02 and 14704 and the Federal Regulations promulgated under the Act, 49 C.F.R. § 376.12(i) and (k).[6] The Motor Carriers Act provides that a person may bring a civil action for injunctive relief alleging violations of 49 U.S.C. §§ 14102 and 14103. *See* 49 U.S.C. § 14704(a)(1). In addition, "[a] carrier or broker providing ... service subject to jurisdiction under chapter 135 is liable for damages sustained by a person as a result of an act or omission of that carrier or broker in violation of this part." 49 U.S.C. § 14704(a)(2).

Specifically, the Plaintiffs have alleged violations of 49 C.F.R. § 376.12(i) and (k). Part 376 of 49 C.F.R. was promulgated pursuant to the authority of 49 U.S.C. § 14102. *See* 49 C.F.R. pt. 376. Section

---

**4.** The first sentence of § 14704(a)(1) provides:

A person injured because a carrier or broker providing transportation or service subject to jurisdiction under chapter 135 does not obey an order of the Secretary or the Board, as applicable, under this part, except an order for the payment of money, may bring a civil action to enforce that order under this subsection.

49 U.S.C. § 14704(a)(1).

**5.** The second sentence provides: "A person may bring a civil action for injunctive relief for violations of sections 14102 and 14103." 49 U.S.C. § 14704(a)(1).

**6.** Section 14702 of the Motor Carriers' Act provides, in part:

(a) In general.-The Secretary or the Board, as applicable, may bring a civil action-
(1) to enforce section 14103 of this title; or
(2) to enforce this part, or a regulation or order of the Secretary or Board, as applicable, when violated by a carrier or broker providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 of this title or by a foreign motor carrier or foreign motor private carrier providing transportation registered under section 13902 of this title.

49 U.S.C. § 14702(a)-(b).

376.12(i) regulates the lease of products, services and equipment from an authorized dealer, while § 376.12(k) outlines the specifications that must be included if escrow funds are required by the lease. 49 C.F.R. § 376.12(i) and (k). The relevant subsections of the regulation provide:

(i) *Products, equipment, or services from authorized carrier.* The lease shall specify that the lessor is not required to purchase or rent any products, equipment, or services from the authorized carrier as a condition or entering into the lease arrangement. The lease shall specify the terms of any agreement in which the lessor is a party to an equipment purchase or rental contract which gives the authorized carrier the right to make deductions from the lessor's compensation for purchase or rental payments.

(k) *Escrow funds.* If escrow funds are required, the lease shall specify:

(1) The amount of any escrow fund or performance bond required to be paid by the lessor to the authorized carrier or to a third party.

(2) The specific items to which the escrow funds can be applied.

(3) That while the escrow fund is under the control of the authorized carrier, the authorized carrier shall provide an accounting to the lessor of any transactions involving such fund....

(5) That while the escrow fund is under the control of the carrier, the carrier shall pay interest on the escrow fund on at least a quarterly basis....

(6) The conditions the lessor must fulfill in order to have the escrow fund returned. At the time of the return of the escrow fund, the authorized carrier may deduct monies for those obligations incurred by the lessor which have been previously specified in the lease, and shall provide a final accounting to the lessor of all such final deductions made to the escrow fund. The lease shall further specify that in no event shall the escrow fund be returned later than 45 days from the date of termination.

49 C.F.R. § 376.12(i), (k)(1)-(6).

### A. Count I: Unauthorized Deduction of Purchase or Rental Payments.

In Count I, the Plaintiffs allege that Arctic's action in deducting purchase or rental payments is unlawful and in violation of 49 C.F.R. § 376.12(i). D & A argues that it is not regulated under 49 C.F.R. Part 376, and that the provisions of 49 U.S.C. §§ 14102 and 14704(a)(1) and (2) do not apply. Furthermore, the Defendants argue that the Members' allegation that D & A is the alter ego for Arctic does not suffice to subject D & A to the federal statutes and regulations. D & A contends that since the Members have not alleged that D & A committed fraud, or other dishonest or unjust acts, that the Members have not fulfilled the requirements necessary for piercing the corporate veil between Arctic and D & A.[7] In response, the

---

7. The Ohio Supreme Court has explained the genesis of "piercing the corporate veil":

A fundamental rule of corporate law is that, shareholders, officers, and directors are not liable for the debts of the corporation.... An exception to this rule was developed in equity to protect creditors from shareholders who use the corporate entity for criminal or fraudulent purposes.... [T]he 'veil' of the corporation can be 'pierced' and individual shareholders held liable for corporate misdeeds when it would be unjust to allow the shareholders to hide behind the fiction of the corporate entity. Courts will permit individual shareholder liability only if the shareholder is indistinguishable from the 'alter ego' or the corporation itself.

*Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos.,* 67 Ohio St.3d 274, 617 N.E.2d 1075, 1085 (1993) (citations omitted). The Ohio Supreme Court continued:

[The c]orporate form may be disregarded and individual shareholders held liable for corporate misdeeds when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

Plaintiffs argue that Arctic and D & A merely have to be "affiliated" to be subject to federal regulations and statutes dealing with federal motor carrier leasing regulations. *Dart Transit Company–Petition for Declaratory Order*, 9 I.C.C.2d 701 (June 28, 1993).

In addition, Arctic argues, for Count I, that the Members' claim is based on a misinterpretation of 49 C.F.R. § 376.12(i) of the Equipment Leasing Regulations. Arctic argues that the Lease Agreement satisfies the truth-in-leasing concerns as addressed by the ICC and that the right to make deductions comes from the Arctic Equipment Lease Agreement and not from the D & A Agreement. Furthermore, according to Arctic, the Arctic Agreement provides for complete disclosure and complies with the letter and spirit of the truth-in-leasing provisions of 49 C.F.R. § 376.12(i).

In considering Count I, the Court will first examine the Commission's *Dart* decision and its applicability to this case. In *Dart Transit Co.*, 9 I.C.C.2d 701 (1993), the issues presented under 49 C.F.R. Part 1057,[8] were:

(1) whether a lease must specify the terms of a separate, independent, equipment purchase or rental contract between the lessor and an affiliated third party, which does not directly give the carrier (lessee) the right to make deductions from the lessor's compensation for purchase or rental payments, and (2) whether a motor carrier must treat money remitted to an affiliated third

party's equipment maintenance reserve fund as the carrier's own escrow fund.

In *Dart,* Dart Transit Co. ("Dart"), was a motor carrier which employed independent drivers. Highway Sales, Inc. ("Highway"), leased motor-vehicle equipment to independent drivers, otherwise known as owner-operators. *See id.* at *3. Highway and Dart were under common ownership and had common officers, but the two companies were separate legal entities.

The Commission treated Highway and Dart as "affiliated" but did not determine their "degree of affiliation." *Id.* The Commission found that the affiliation of the two companies was sufficient to trigger the disclosure requirements of the regulations. *See id.* at *13. As for the second issue that was addressed, the Commission found that the affiliation between the two companies was sufficient to impute the agreement of one company to the other. *See id.* at *17. The Commission concluded: "[D]art should treat money remitted to Highway's maintenance reserve fund the same way it would if the money were remitted to Dart's own fund." *Id.* at *18.[9]

█ The threshold issue before this Court is the deference due the ICC's *Dart* opinion. In *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the Supreme Court adopted a two step approach for the interpretation of regulations and statutes. In step one, if the meaning of the statute in question is clear, then a court should look to the statute itself for guidance. Under step two, if the statute is unclear, the court should defer to a *reasonable* agency interpretation. *See id.* at 842–43, 104 S.Ct. 2778.[10]

*Belvedere Condominium,* 617 N.E.2d at 1086. Under Ohio law, the Members would bear the burden of proving the necessity of piercing the corporate veil. *See, e.g., Zimmerman v. Eagle Mortgage Corp.,* 110 Ohio App.3d 762, 675 N.E.2d 480, 485 (1996) (citing *LeRoux's Billyle Supper Club v. Ma,* 77 Ohio App.3d 417, 602 N.E.2d 685 (1991)).

8. Codified as 49 C.F.R. pt. 376 in 1996.

9. The Commission "[v]iew[ed] Highway as maintaining the escrow fund to keep operational the equipment leased to Dart." *Id.* at *19.

10. The Supreme Court outlined the two-step test in the following manner:

When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not

The Sixth Circuit has found that *Chevron* deference does not apply to non-binding advisory opinions, or to an interpretation that stems from the agency's litigation posture in a case. *Mid–America Care Found. v. NLRB*, 148 F.3d 638, 642 (6th Cir.1998) (citations omitted). When an agency has adopted an interpretation of a given statute through adjudication, however, such interpretation receives *Chevron* deference. *See id.* (citing *Massachusetts v. FDIC*, 102 F.3d 615, 621 (1st Cir.1996)); *see also City of Chicago v. FCC*, 199 F.3d 424 (7th Cir.1999) (finding that cases show that *Chevron* deference is due declaratory rulings).

*Dart* was a formal adjudication by the ICC. *See, e.g., Radiofone, Inc. v. F.C.C.*, 759 F.2d 936, 939 & n. 3 (D.C.Cir.1985), made pursuant to 5 U.S.C. § 554(e) (Adjudications).[11] The opinion followed from *Dart's* petition seeking a declaratory order. In response to *Dart's* petition, the Commission issued a public notice of the proceedings and invited comments. *See Dart Transit Co., Petition for Declaratory Order–Leasing Regs.*, 57 Fed.Reg. 3215 (1992) (Notice of Institution of Proceeding). Dart filed a Response to the Comments in Opposition, and the Commission's Office of Compliance and Consumer Assistance replied. *Dart*, 9 I.C.C.2d 701, at *2. In reaching its decision, the Commission considered the comments and the purpose behind the leasing regulations. *Id.* at *10.

This Court finds that the ICC *Dart* opinion, a formal adjudication, is entitled to *Chevron* deference. *City of Chicago*, 199 F.3d at 428. Under the first step of *Chevron*, the meaning of the statute is not clear when applied to the present case. Specifically, it is unclear whether 49 U.S.C.

§§ 14102 and 14103, and 49 C.F.R. § 376.11(i) and (k), apply to a company that is under common ownership and control of a regulated carrier. Next, this Court needs to consider whether the ICC's interpretation of 49 C.F.R. § 376.12 is reasonable. In making this determination, the agency's interpretation of the statute need only be "[b]ased on a *permissible* construction of the statute . . ." *City of Chicago v. FCC*, 199 F.3d at 428 (7th Cir. 1999) (citing *Holly Farms Corp. v. NLRB*, 517 U.S. 392, 116 S.Ct. 1396, 134 L.Ed.2d 593 (1996)) (emphasis added). As "long as the agency has set out a reasonable interpretation, it does not matter whether, in the first instance, we would have come to the same conclusion." *City of Chicago*, 199 F.3d at 428; *see also Royal Geropsychiatric Servs. v. Tompkins*, 159 F.3d 238, 244 (6th Cir.1998) (finding that a "permissible interpretation" deserves deference).

Here, the ICC's interpretation was based on a finding that "[i]t is clear that our regulations do not permit *Dart* to do itself what it maintains Highway should be allowed to do." *Dart*, 9 I.C.C.2d 701, at *9. The ICC found that the purpose behind the regulation was to prevent "[a]buses or the potential for abuse occasioned by collusion between a carrier and the third-party beneficiary of an equipment purchase deduction." *Id.* at 13. In reaching its conclusion in *Dart*, the Commission took into consideration comments and the purpose behind the leasing regulations. *Dart*, 9 I.C.C.2d 701, at *10. This Court finds that this interpretation is reasonable as it serves to bring entities "affiliated" with registered motor carriers under the umbrella of the Act. The Commission's findings prevent registered carriers from taking advantage of a potential loophole in the

---

simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.
*Chevron*, 467 U.S. at 842–43, 104 S.Ct. 2778.

**11.** Section 554(e) provides that "[t]he agency, with like effect as in the case of other orders,

and in its sound discretion, may issue a declaratory order to terminate a controversy or remove uncertainty." 5 U.S.C. § 554(e). "This section applies, according to the provisions thereof, in every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing . . ." 5 U.S.C. § 554(a).

Act. If this loophole is not closed, a registered carrier could create a non-registered business entity and thereby avoid the regulations promulgated under the Motor Carriers Act. Based on this, the Court finds that the ICC's interpretation of 49 C.F.R. § 376.12 in *Dart* is reasonable and grants *Chevron* deference to that interpretation.

■ Following *Dart*, D & A and Arctic's affiliation is enough to bring D & A under the provisions of the Motor Carriers Act. In *Dart*, Highway and Dart were under common ownership and had common officers; just as Arctic and D & A do in this case. As the Commission treated Highway and Dart as affiliates, so will this Court treat D & A and Arctic as affiliated in this case.

The next issue is whether the Arctic Lease Agreement is in violation of 49 C.F.R. § 376.12(i). Section 376.12(i), is titled "Products, equipment, or services from authorized carrier," and provides:

The lease shall specify that the lessor is not required to purchase or rent any products, equipment, or services from the authorized carrier as a condition of entering into the lease arrangement. The lease shall specify the terms of any agreement in which the lessor is a party to an equipment purchase or rental contract which gives the authorized carrier the right to make deductions from the lessor's compensation for purchase or rental payments.

49 C.F.R. § 376.12(i). Here, the Arctic Agreement satisfies the requirement, contained in the first sentence of this subsection that "[t]he lease shall specify that the lessor is not required to purchase or rent any products, equipment, or services from the authorized carrier as a condition of entering into the lease arrangement." 49 C.F.R. § 376.12(i). The Agreement provides in paragraph E that the "Contractor is not required to purchase or rent any products, equipment or services, from Carrier as a condition of entering into this Agreement, but may do so at his/her option." The Agreement also satisfies the second requirement of the subsection which provides that "[t]he lease shall specify the terms of any agreement in which the lessor is a party to an equipment purchase or rental contract which gives the authorized carrier the right to make deductions from the lessor's compensation for purchase or rental payments." 49 C.F.R. § 376.12(i). Paragraph 5A states, in part, that "Contractor hereby authorizes Carrier to deduct from Contractor's settlements escrow fund, or other compensation *$427.93* per week, and to pay *D & A Associates Ltd.* of *Hilliard Ohio* a like amount for the sole purpose of satisfying Contractor's lease obligation to *D & A Associates Ltd.*" There is a line for an individual contractor's initials following paragraph 5A.

Based on the fact that the Arctic Lease Agreement comports in all respects with the requirements of 49 C.F.R. § 376.12(i), the Agreement satisfies the regulations. Therefore, the Court grants summary judgment to the Defendants on Count I. *See Dart*, 9 I.C.C.2d 701, at *10, *15 (finding that the language in Dart's Agreement with the independent contractors, with respect to disclosure of rental payments, satisfied the regulations.) [12]

---

**12.** The Commission found in *Dart*:

Dart's "Carrier Operating Agreement" clearly provides that the carrier will withhold funds from its independent drivers' compensation only if so directed by the drivers. The addendum to Dart's Independent Contractor Operating Agreement is the authorization for Dart to deduct and remit funds in amounts and on withholding schedules specified by the owner-operators.... The Commission announced in Lease and Interchange, supra, at 315–316,

when proposing the regulation at 49 C.F.R. § 1057.12(i), that the " * * * rule is designed to ensure that the lessor will not be obligated to purchase or rent products or services from the authorized carrier as a condition to entering into a lease agreement." Clearly, this interest is satisfied by having the owner-operator affirmatively instruct Dart on the "Independent Contractor Operating Agreement" addendum to deduct and remit to Highway specific sums for equipment rental purposes. The fact that the addendum bears only the signature of

### B. Count II: Unauthorized Deduction and Non–Return of Escrow Funds.

The Plaintiffs allege in Count II that the Defendants made unauthorized deductions and did not return escrow funds. The Defendants argue, in return, that the D & A Lease Agreement is not subject to 49 C.F.R. Part 376 because neither D & A nor the Members are "motor carriers registered with the Secretary [of Transportation] to transport property" as required by 49 C.F.R. § 376.1. In addition, the Defendants contend that the "maintenance fund" in question is not an escrow fund as defined by 49 C.F.R. § 376.2(l), and that since the "maintenance fund" is not an escrow fund, 49 C.F.R. § 376.12(k), does not apply.[13]

The Plaintiffs contend that funds collected for the purpose of maintaining an owner-operators equipment are escrow funds as contemplated by the federal regulations and, therefore, must be returned to the owner-operators upon termination of the lease if the funds are not applied toward equipment maintenance.[14]

An "escrow fund" is defined as:

Money deposited by the lessor with either a third party or the lessee to guarantee performance, to repay advances, to cover repair expenses, to handle claims, to handle license and State permit costs, and for any other purposes mutually agreed upon by the lessor and lessee.

49 C.F.R. § 376.2(l).

The Commission found, in Dart, that the non-regulated company's maintenance fund qualified as an escrow fund under the

Regulations. In Dart, Dart deducted equipment lease payments and maintenance reserve funds from the independent drivers compensation and remitted them to Highway if the independent drivers directed Dart to do so by signing and dating an addendum to the agreement. 9 I.C.C.2d 701, at *7–*8. The independent driver deposited money with Dart both to pay Highway and to contribute to the maintenance fund. See id. at *16. The Commission found that this fund was "plainly" an escrow fund maintained by Highway and also found that the company's affiliation was enough to impute an agreement made by one company to the other. Id. at *16–*17. Highway was deemed, by the Commission, "as maintaining the escrow fund to keep operational the equipment leased to Dart." Id. at *19. The maintenance fund in question was therefore covered by 49 C.F.R. Part 1057. See id. at *20.[15] In conclusion, the Commission found: "[w]e believe Dart should treat money remitted to Highway's maintenance reserve fund the same way it would if the money were remitted to Dart's own fund." Id. at *18. The Commission did not reach the question of whether the maintenance fund violated 49 C.F.R. § 1057.72(k), but concluded that Dart's Agreement satisfied the requirements of § 1057.12(i), which the Commission found was broad enough to regulate escrow funds.

■ As set forth above, D & A and Arctic are affiliated entities. As affiliated entities, D & A is subject to 49 C.F.R. § 376.12(k), which provides: "[i]f escrow funds are required, the lease shall specify:

---

the party the leasing regulations are designed to protect (the independent driver) does not mean that drivers involved in equipment rental arrangements with Highway are subject to coercion or deprived of information regarding terms of the arrangements. Accordingly, we find that the "Contractor Settlement Deduction Request" appended to Dart's agreement with its owner-operators complies with the leasing regulations.

Dart, 9 I.C.C.2d at *14–*15.

**13.** The Arctic Agreement provides for the creation of a separate escrow fund.

**14.** Additionally, the Plaintiffs forward that the Defendants have unlawfully kept all of the Plaintiffs' money in violation of federal law that provides that escrow funds plus interest be returned no later than forty-five days from the date of termination of the lease. See 49 C.F.R. § 376.12(k).

**15.** Codified as 49 C.F.R. Part 376 in 1996.

(1) The amount of any escrow fund or performance bond required to be paid by the lessor to the authorized carrier or to a third party." 49 C.F.R. § 376.12(k)(1). The subsection also states: "[w]hile the escrow fund is under the control of the authorized carrier, the authorized carrier shall provide an accounting to the lessor of any transaction involving such fund." 49 C.F.R. § 376.12(k)(3). Furthermore, the carrier is required to pay interest to the escrow fund, on at least a quarterly basis. *See* 49 C.F.R. § 376.12(k)(5). And under 49 C.F.R. § 376.12(k)(6), the lease is required to specify the return of the funds within forty-five days of the date of termination. 49 C.F.R. § 376.2(*l*).

Just as in *Dart*, the maintenance fund in this case qualifies as an escrow fund and is subject to the regulations of 49 C.F.R. § 376.12. It meets the definition of an escrow fund as it is "money deposited by the lessor [Members] with either a third party or the lessee ... to cover repair expenses ..." 49 C.F.R. § 376.2(*l*). And, as in *Dart*, the affiliation between D & A and Arctic is sufficient to impute the agreement of one company to the other, and to bring D & A under the coverage of the Motor Carriers Act. Finally, this Court finds that the maintenance/escrow fund in this case is also covered by § 1057(k) (now codified as 49 C.F.R. § 376.12(k)). Summary judgment to the Defendants on this claim is therefore **DENIED**.

### C. *Primary Jurisdiction.*

■ The common law doctrine of primary jurisdiction "[a]rises when a claim is properly cognizable in court but contains some issue within the special competence of an administrative agency." *United States v. Haun*, 124 F.3d 745, 750 (6th Cir.1997); *see also Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 889 (6th Cir.1990) (finding that primary jurisdiction exists when "[a] court

and the agency have concurrent jurisdiction over the same matter but when no statutory provisions coordinate duties of the court and the agency."). When a court finds that primary jurisdiction applies, the matter is stayed in the court action pending the resolution of the administrative decision. *Haun*, 124 F.3d at 749.

The Defendants argue that the Plaintiffs' claims should be dismissed in deference to the jurisdiction of DOT and FHWA which are in a better position to determine the issues involved in the case.

The Plaintiffs respond that under 49 U.S.C. § 14704, they are provided with the right to determine the forum in which regulatory claims will be brought and heard.[16] In their Complaint, the Plaintiffs request injunctive relief which is available only through a court action. Furthermore, Congress authorized private enforcement of the Motor Carriers Act and explicitly removed the federal government from its role in resolving commercial disputes.

In *Owner–Operator Independent Drivers Association, Inc. v. New Prime, Inc.*, 192 F.3d 778 (8th Cir.1999), the court addressed the question of primary jurisdiction and found that the doctrine did not apply to the case before them. Typically, the doctrine allows a court to stay an action pending the outcome of an agency's resolution of a question within its area of expertise. *See id.* at 785–86. In *New Prime*, following the district court's dismissal of the case under the doctrine of primary jurisdiction, the FHWA declined to exercise its jurisdiction over the owner-operators' private dispute since "[C]ongress in the ICC Termination Act's legislative history told the agency not to allocate scarce resources to resolving private disputes." *Id.* at 785. The Eighth Circuit therefore found that the district court

---

16. Plaintiffs state that Magistrate Judge King instructed the Defendants to file a 12(b)(1) Motion to Dismiss or a Motion to Dismiss based on lack of subject matter jurisdiction under 28 U.S.C. § 1331, but not a motion to dismiss based on the common law doctrine of primary jurisdiction; and that primary jurisdiction has nothing to do with the lack of subject matter jurisdiction.

should proceed to exercise its jurisdiction over this matter. *See id.* at 786.

 Primary jurisdiction is also inapplicable in this case. First, the Court found in *New Prime* that the second sentence of § 14704(a)(1), and that § 14704(a)(2) authorize private actions for damages and injunctive relief for violations of the Motor Carriers Act and its regulations. 192 F.3d at 784–85.[17] Second, the matter in dispute has already been considered and ruled upon by the Commission in a formal adjudication. *See Dart,* 9 I.C.C.2d 701, at \*1. Third, the Commission has declined petitions to review similar matters. *See, e.g., New Prime,* 192 F.3d at 785. And finally, only courts are permitted to grant the injunctive relief that the Plaintiffs request. *See* 49 U.S.C. § 14704(2). Therefore, the Defendants' Motion to Dismiss Under the Doctrine of Primary Jurisdiction is **DENIED**.

### V. CONCLUSION

The Defendants' Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part. The Defendants' Motion to Dismiss based on the doctrine of primary jurisdiction is **DENIED**.

**IT IS SO ORDERED.**

---

**17.** The second sentence of § 14704(a)(1) provides: "A person may bring a civil action for injunctive relief for violations of sections 14102 and 14103." 49 U.S.C. § 14704(a)(1).