**In re INTRENET, INC., et al., Debtors.**

**Owner–Operator Independent Drivers Association, Inc., et al., Plaintiffs,**

**v.**

**Huntington National Bank, et al., Defendants.**

**Bankruptcy No. 01–10314. Adversary No. 01–1044.**

United States Bankruptcy Court, S.D. Ohio, Western Division.

Jan. 29, 2002.

Timothy J. Hurley, Curt C. Hartman, Cincinnati, OH, David C. Worrell, Gregory M. Feary, Indianapolis, IN, for Debtors.

Raymond J. Pikna, Jr., Cincinnati, OH, U.S. Trustee.

## ORDER GRANTING PLAINTIFFS' CROSS–MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS–MOTIONS FOR SUMMARY JUDGMENT

J. VINCENT AUG, Jr., Bankruptcy Judge.

This matter is before the Court on cross-motions for summary judgment filed by Plaintiff Owner–Operator Independent Drivers Association, Inc. ("Owner–Operators")(Doc. 38), Debtor–Defendants Intrenet, Inc., Roadrunner Trucking Co., Inc., Roadrunner Distribution Service, Advanced Distribution System, Inc., and Eck Miller Transportation Corporation ("Debt-

ors")(Doc. 37), and Defendant Huntington National Bank, N.A. ("Huntington")(Doc. 36). Also before the Court is Huntington's motion for leave to file a memorandum in response to the Owner–Operator's cross-motion (Doc. 41).

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the general order of reference entered in this district. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

The underlying adversary proceeding initiated by the Owner–Operators requests, among other things, declaratory relief that certain funds collected by the Debtors from the Owner–Operators are escrowed funds pursuant to federal Truth–In–Leasing regulations, 49 C.F.R. § 376 et seq., and, therefore, that the funds are not property of the Debtors' estate. The Owner–Operators also seek an accounting of the funds from the Debtors and recovery of the funds from Huntington.

Early in the case, the parties agreed that whether the funds were held in escrow was a threshold legal issue. *See* Doc. 25, p. 3; Doc. 24, p. 7; Doc. 26, p. 5. Following a pretrial conference on August 22, 2001, the Court ordered the parties to file cross-motions for summary judgment on the existence of an escrow.

The Owner–Operators contend that the subject funds are escrow funds and that said funds are not property of the bankruptcy estate. The Owner–Operators advance three theories: 1) that the escrow provisions of the federal Truth–In–Leasing regulations create a statutory trust; 2) that the agreements between the Debtors and the Owner–Operators create an express trust; and 3) that federal common law principles create a constructive trust over the funds for the benefit of the Owner–Operators.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). On cross-motions for summary judgment, "the court must evaluate each motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *B.F. Goodrich Co. v. United States Filter Corp.*, 245 F.3d 587, 592 (6th Cir.2001)(quoting *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir.1991)).

The parties have identified no genuine issue of material fact. Briefly stated, the Debtors are authorized carriers as defined under 49 C.F.R. § 376.2(a). The Owner–Operators own truck tractor and/or tractor trailer combinations which they lease, along with their driving services, to the Debtors.[1] The leases are evidenced by independent contractor agreements. The independent contractor agreements identify both a general escrow fund as well as a license plate and permit fund. The funds are funded by weekly deductions taken by the Debtors out of the Owner–Operators' compensation.

Illustrative independent contractor agreements attached as Exhibit A to the owner-Operators' statement of material facts generally contain the following provisions relative to the general escrow funds: that an amount of escrow funds shall be held by the lessee; that the funds shall be held for the purpose of insuring compliance with the agreement; that the lessee will provide an accounting on a regular

---

1. Hence, under the federal Truth–In–Lending regulations, an owner-operator is often referred to as a lessor and a carrier is often referred to as a lessee.

basis and upon request of the lessor; that the lessee shall pay interest on the funds at a specific rate; and that the funds shall be returned to the lessor within 45 days of the termination of the agreement.

The illustrative independent contractor agreements generally contain the following provisions regarding the license plate and permit fund: that deductions will be made to cover the purchase cost of base plates and permits; and that the fund held shall be returned to the lessor, with interest, upon termination of the agreement prior to the purchase of the plates.

### The Funds Are Subject To A Statutory Trust

■ Pursuant to 49 C.F.R. § 376.2(*l*) of the federal Truth–In–Leasing regulations, an "escrow fund" is defined as follows:

Money deposited by the lessor with either a third party or the lessee to guarantee performance, to repay advances, to cover repair expenses, to handle claims, to handle license and State permit costs, and for any other purposes mutually agreed upon by the lessor and lessee.

Pursuant to 49 C.F.R. § 376.12(k), a written lease regarding escrow funds must include the following:

(1) The amount of any escrow fund . . .

(2) The specific items to which the escrow fund can be applied.

(3) That . . . the authorized carrier shall provide an accounting to the lessor . . .

(4) The right of the lessor to demand to have an accounting . . .

(5) That . . . the carrier shall pay interest on the escrow fund . . .

(6) The conditions the lessor must fulfill in order to have the escrow fund returned . . .

The subject regulations were enacted for the protection of owner-operators from abusive practices of carriers, particularly with regard to escrow funds. *See Lease and Interchange of Vehicles,* 131 M.C.C. 141 (1979); *Lease and Interchange of Vehicles,* 129 M.C.C. 700 (1978)(prior to enactment of regulations, one in four owner-operators were not repaid their escrow). The regulations have passed constitutional muster. *See Global Van Lines, Inc. v. Interstate Commerce Commission,* 627 F.2d 546 (D.C.Cir.1980).

It is clear that with regard to both funds, money was deposited by the lessor with the lessee for one or more of the express purposes set forth in 49 C.F.R. § 376.2(*l*). Thus, we find that the subject funds meet the definition of an escrow fund under 49 C.F.R. § 376.2(*l*). *See Owner–Operator Independent Drivers' Association v. Arctic Express, Inc.,* 87 F.Supp.2d 820 (S.D.Ohio 2000). This finding is further supported by the fact that the language of the independent contractor agreements closely tracks the requirements set forth in 49 C.F.R. § 376.12(k), especially with regard to the general escrow funds.[2]

The Debtors contend that applicable code sections 49 U.S.C. §§ 14102 and 13301 do not specifically refer to an escrow fund. This is true. However, the regulations promulgated under these code sections specifically refer to an escrow fund. Further, the code sections contemplate the promulgation of such regulations.

---

**2.** We do not believe that a complete tracking of the language of 49 C.F.R. § 376.12(k) in the written lease agreement is a prerequisite for the establishment of an escrow under 49 C.F.R. § 376.2(*l*). Otherwise, an unscrupulous carrier could evade the regulations by carefully tailoring its lease.

Both the Debtors and Huntington contend that the federal regulatory scheme creates an escrow only when the funds are held with a third party. To the contrary, the regulations contemplate an escrow regardless of who holds the funds. *See* 49 C.F.R. § 376.2(*l*)("escrow fund" is established when "Money [is] deposited by the lessor with *either* a third party or the lessee ...")(emphasis added). Indeed, the regulation provides the option of allowing the lessee to hold the funds because it is the "practice normally followed in the industry" even though deposit with a third party is recognized as the "technical definition of escrow." *Lease and Interchange of Vehicles,* 131 M.C.C. 141.

The Court acknowledges that this federal regulatory scheme is at odds with state law regarding the formation of a trust. However, in the case before us, state law is not determinative. Thus, the cases cited by the Debtors and Huntington in support of their positions that trust funds must be held by a third party and that trust funds do not generate interest payments are not instructive.

Rather, we are guided by an the analogous case of *Begier v. Internal Revenue Service,* 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990) wherein the Supreme Court held that a statutory trust was created by the Internal Revenue Code for the benefit of the Internal Revenue Service for withheld employee or trust fund taxes. The operative federal statute in *Begier* was 26 U.S.C. § 7501 ("Whenever any person is required to collect or withhold any internal revenue tax from another person ... the amount of tax so collected shall be held to be a special fund in trust for the United States.").

Lastly, Huntington contends that the creation of an escrow fund is permissive under the regulations. This is true. But it is equally true that if escrow is required

for any reason, then the regulations relating to escrow shall be followed. *See* 49 C.F.R. § 376.12(k)("*If* escrow funds are required, the lease *shall* specify ...")(emphasis added). There is no question that escrow was required as between the Debtors and the Owner–Operators.

Accordingly, we conclude that the funds are subject to a statutory trust created by the federal Truth–In–Leasing regulations for the benefit of the Owner–Operators.

In view of the above holding that the funds are subject to a statutory trust, it is not necessary to address the Owner–Operators' other contentions that the Funds are subject to an express trust or a constructive trust.

### The Funds Are Not Property Of The Bankruptcy Estate

■ Property over which the debtor has legal title but not an equitable interest becomes property of the estate "only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d). Also, property over which a debtor exercises some power solely for the benefit of another is not property of the estate. 11 U.S.C. § 541(b)(1). Thus, property held by a debtor in trust for the benefit of another is not property of the estate. *See Begier,* 496 U.S. at 59, 110 S.Ct. 2258 (trust fund taxes not property of estate).

■ While bankruptcy law determines what property is property of the estate, the nature and extent of a debtor's property rights are determined by non-bankruptcy law. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Such non-bankruptcy law is typically state law, but it may also be other (non-bankruptcy) federal law. *See Begier,* 496 U.S.

53, 110 S.Ct. 2258 (26 U.S.C. § 7501 found to create statutory trust).

The existence of statutory trusts has been specifically acknowledged by the Sixth Circuit. In *In re Omegas Group, Inc.*, 16 F.3d 1443, 1449 (6th Cir.1994), the Sixth Circuit stated that if a "legislature has created a specific statutory right to have particular kinds of funds held *as if in trust*," then such property would not be property of the estate. (emphasis added). The Sixth Circuit then specifically referenced that the legislatures of a number of states have created such a right with regard to construction funds.

■■■ The Court acknowledges that equality of distribution is a primary goal of the Bankruptcy Code. However, the Defendants' contention that the Debtors simply made "accounting entries" relative to the funds and that the Owner–Operators are "no more than potential unsecured creditors" undermines a primary goal of the federal Truth–In–Leasing regulations. While the Bankruptcy Code imposes an intentionally broad definition of what is property of the estate, § 541 specifically contemplates that some property, i.e., property over which the debtor holds for the benefit of another, is not property of the estate.

■■ As explained above, we have already held that the funds are subject to a statutory trust created by the federal Truth–In–Leasing regulations. Accordingly, we further conclude that the funds are not property of the Debtors' bankruptcy estate.

### Huntington's Motion For Leave To File A Response Is Denied

In its motion for leave to file a response to the Owner–Operators' cross-motion, Huntington contends that the Owner–Operators' three theories regarding the existence of a statutory trust, an express trust, and a constructive trust as set forth in its cross-motion are new issues being raised for the first time. To the contrary, the issue of the existence of a statutory trust created by federal regulations was discussed at the August 22, 2001 pretrial conference. Thus, it cannot be said that this is a new issue. Since the Court did not find it necessary to address the issues of whether an express trust or a constructive trust was created, the balance of Huntington's request is moot.

Accordingly, we hereby DENY Huntington's motion for leave to file a memorandum in response.

### Conclusion

The Owner–Operators' cross-motion for summary judgment is hereby GRANTED;

The Debtors' cross-motion for summary judgment is hereby DENIED; and

Huntington's cross-motion for summary judgment is hereby DENIED.

This adversary proceeding will be set for a scheduling conference by separate order.

IT IS SO ORDERED.