RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0097P (6th Cir.)
File Name: 02a0097p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

GRAHAM A. PETERS,
        *Plaintiff-Appellant,*

        *v.*

THE LINCOLN ELECTRIC
COMPANY,
        *Defendant-Appellee.*

No. 00-3562

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 99-00793—Patricia A. Hemann, Magistrate Judge.

Argued: August 8, 2001

Decided and Filed: March 21, 2002

Before: MOORE and COLE, Circuit Judges; ROSEN,
District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Ann-Marie Ahern, SIMON LAW FIRM,
Cleveland, Ohio, for Appellant. Lee J. Hutton, DUVIN,
CAHN & HUTTON, Cleveland, Ohio, for Appellee.

_____

[*] The Honorable Gerald E. Rosen, United States District Judge for the
Eastern District of Michigan, sitting by designation.

1

**ON BRIEF:** Ann-Marie Ahern, Ellen S. Simon, SIMON LAW FIRM, Cleveland, Ohio, for Appellant. Lee J. Hutton, Kenneth D. Schwartz, DUVIN, CAHN & HUTTON, Cleveland, Ohio, for Appellee.

————————

**OPINION**

————————

ROSEN, District Judge.

## I. *INTRODUCTION*

On June 23, 1998, Plaintiff/Appellant Graham A. Peters filed suit in Ohio state court against his former employer, Defendant/Appellee Lincoln Electric Company, alleging that his "forced" retirement from the company was the result of age discrimination prohibited under the Ohio Revised Code, § 4112. Peters also asserted Ohio common law claims of breach of contract, detrimental reliance, and breach of public policy. Lincoln subsequently removed the case to the United States District Court for the Northern District of Ohio on federal question grounds contending that Peters' deposition testimony established that, among his claims in this lawsuit, Peters was asserting an ERISA claim. On July 9, 1999, the District Court denied Plaintiff's Motion to Remand his claims to Ohio state court. The court subsequently granted Lincoln's Motion for Summary Judgment on the state law claims on January 24, 2000 and denied Peters' Motion to Alter or Amend Judgment on February 28, 2000, before ultimately entering Judgment for Defendant on March 30, 2000.[1] Plaintiff timely appealed the District Court's decisions.

For the reasons set forth below, we affirm the District Court's grant of Defendant's Motion for Summary Judgment,

———————————————

[1] Peters also stipulated to the dismissal of his "ERISA claim" without prejudice, thereby rendering the March 30 Judgment a "Final Judgment."

and its denial of Plaintiff's Motion to Remand and Motion to Alter or Amend Judgment.

## II. *FACTUAL BACKGROUND*

Plaintiff Graham Peters worked for Defendant Lincoln Electric Company ("Lincoln") for 31 years. He began his employment with Lincoln in 1966 as a junior accountant and was promoted two times within his first 5 years of employment. In 1992, Peters became the Corporate Controller, one of the top forty management positions at Lincoln and the second highest financial management position, second only to the company's Chief Financial Officer ("CFO"). Although Peters never became a Certified Public Accountant, he remained responsible for all areas of domestic corporate accounting and financial reporting with approximately 50 people reporting to him.

Lincoln Electric Company is a manufacturer of arc welding, which began as a domestic company and expanded to include operations in sixteen countries by 1992. By the early 1990s, however, Lincoln was experiencing financial troubles, evidenced, in part, by their CFO's announced retirement. The CFO, Ellis Smolik ("Smolik"), announced his intention to retire by 1993, at age 74, and hand-picked Jay Elliott ("Elliott") to replace him. Elliott joined Lincoln in 1993 and formally assumed the role of CFO when Smolik ultimately retired in 1994.[2] Elliott came from outside of the company and had extensive qualifications, including an MBA from the University of Michigan, Harvard management training, and financial management experience as the Vice President of Finance for Goodyear Tire and Rubber Company's international businesses.

---

[2]Peters claims that, during the transition period when Elliott and Smolik were both employed at Lincoln, Elliott once referred to Smolik as "a little old gray-haired man waiting to retire." (Peters Dep. at 398, J.A. at 930).

Throughout Plaintiff's time with Lincoln, his subordinates held him in high esteem and considered him a good manager. Senior managers recognized Peters for his dedication to effective control of the company's finances and for properly serving the interests of Lincoln's shareholders and employees. The Defendant's former President, Don Hastings, testified that, while Peters did not generally work directly for him, Hastings was satisfied with Plaintiff's performance in the work he did in their limited interactions. During his deposition, Hastings testified that he never received complaints from other employees about Peters, but noted in his affidavit that Smolik once told him that he did not feel that Peters was developing as quickly as he (Smolik) thought he should be.

Hastings also testified that, when determining yearly bonuses, Peters received relatively high merit-ratings, which are based, in part, on peer evaluation. While Peters' ratings stayed high in comparison to other executives through the years, they also steadily declined in numeric value.

The parties have varying accounts as to the level of performance Plaintiff achieved after Elliott took over the CFO position. Elliott claims that he became increasingly dissatisfied with Peters' performance. [Elliott Dep. pp. 32-35]. Specifically, he was dissatisfied with Peters' failure to keep him and other executives abreast of financial information. *Id.* at 29, 39. Elliott distrusted Peters and claims that Peters did not have an adequate understanding of the relationship between outside auditors and Lincoln. Elliott informed Peters that he lacked the necessary international experience in light of Lincoln's growing international presence.

Peters contends that his continued employment with Lincoln and his rise through the ranks evidences his competency as the Corporate Controller. As proof of his good management skills, Peters offers multiple affidavits from former subordinates and co-workers.

employees. None of Peters' evidence objectively establishes that Peters was compelled to resign because of his age.

In sum, the District Court did not err in dismissing Plaintiff's constructive discharge claim.

### IV. *CONCLUSION*

For the foregoing reasons, the District Court's denial of Plaintiff's Motion to Remand, its grant of Defendant's Motion for Summary Judgment, and its denial of Plaintiff's Motion for Reconsideration are **AFFIRMED**.

compelled to resign if he took the "intolerable" new position, which must be shown under both the Ohio and federal standards.

In applying this test, *Mauzy* directs courts to consider a number of factors:

> No single factor is determinative. Instead, a myriad of factors are considered, including reductions in sales territory, poor performance evaluations, criticism in front of coemployees, inquiries about retirement intentions, and expressions of a preference for employees outside the protected group.

*Id.*

Here, Peters concedes that the only problem he had with the transfer was that Jay Elliott would still be his superior if he took the new Director's job. However, unlike *Mauzy*, where when a new manager took over as the plaintiff's supervisor, she expressed her preference for younger employees, repeatedly inquired into Mauzy's plans to retire, told her to "take the money and run," frequently berated Mauzy in front of her coworkers, gave her negative evaluations, reduced her staff and territory, introduced a younger employee to Mauzy's key customers, and noted in her final evaluation that "you can't teach an old dog new tricks," there is no objective evidence to support Peters' claim. Peters did not testify that he felt he would be terminated if he took the new position. He acknowledged that the position he was offered was "professional" and "meaningful."

Peters' only real complaint was that he could not work with someone who had demoted him. However, as the District Court noted, hurt feelings are not enough to create a case of constructive discharge. While Peters testified that he had some general "suspicions" about a systematic plot to eliminate older employees, his feelings are based upon nothing more than suspicion and conjecture. His one affidavit offered in support is from a plant worker who also had only his own suspicions that Lincoln was targeting older

In 1996, Peters became a project coordinator for "InfoSource One," a project that concerned implementing a new automated information system for Lincoln's financial areas.[3] During the project, Peters reported to Frederick Anderson. Peters claims that his first indication of Lincoln's dissatisfaction in his long career with Lincoln was a memo Anderson drafted in 1997 alleging certain performance deficiencies in relation to his work on InfoSource One. The memo outlined Anderson's dissatisfaction with Peters' failure to meet certain deadlines, which eventually led to Lincoln's decision to replace him as the project coordinator. Plaintiff claims that Anderson wrote the memo at the instruction of Elliott. Lincoln contends that, when Anderson decided to replace Peters on the InfoSource project, Elliott merely advised him to document his reasons for doing so.[4]

During the year that Peters was working on InfoSource One, his Controller duties were divided among two younger managers, Vince Petrella, who was 37 years old, and Gabe Bruno, who was 29. They received mixed reviews on their performance. While in comparison to Peters, Petrella and Bruno appeared to be less liked and less respected by their subordinates, Elliott became increasingly satisfied with the

---

[3] By both parties' accounts, however, Peters was supposed to return to the Controller position upon completion of InfoSource One. Plaintiff views Infosource One as a disguised design to force older employees out of Lincoln by reassigning them and then forcing early retirement. Defendant, however, asserts that its future existence depended on the successful completion of Infosource One, which the company deemed to be one of the most ambitious project ever undertaken.

[4] Anderson gave testimony in two separate affidavits. The first was in regard to his dissatisfaction with Peters. The second affidavit was supplemental in nature and included additional positive testimony. Anderson contends that Elliott advised him to document Peters' deficiencies because they were letting him go from the Revenue Team on InfoSource One. His supplemental performance appraisal does not contradict his first, but merely includes positive comments that Anderson did not testify to in the first affidavit. Taking the two affidavits together provides a complete assessment of Peters' work on Infosource, rather than the contradicting assessment that Peters claims.

way the finance department was running. Elliott's apparent satisfaction with the department in Plaintiff's absence led to his decision to remove Peters from the Controller position. Elliott told Peters that he lacked the international experience needed for Lincoln's growing needs to remain in the Controller position and instead offered him a position as Director of Benefits Accounting.[5]

This new Director's position reduced Peters' then-current salary of $112,000 to $90,000. The $90,000 base salary was "red-circled," which permanently locked the salary at $90,000. The "red-circling" had the effect of, on one hand, barring Peters from ever receiving raises, but, on the other hand, also preventing his salary from any further reduction.[6] The position was also accompanied by a bonus based on the same type of "merit-ratings" that Peters had been subject to for his entire executive career with Lincoln. There was, however, an indication that Peters' "executive" status and continued participation in, Lincoln's Supplemental Executive Retirement Program ("SERP"), would be under review should he accept the new position.[7] In the new Director's position,

---

[5]Elliott claims to have met with the President of Human Resources to create this new position specifically designed to utilize the best of Peters' knowledge, background and experience.

[6]Peters points to the "red-circling" as Lincoln's effort to stall his growth. Lincoln, however, claims to have "red-circled" the salary in Peters' best interests because the job was already over-valued and the salary would continue to decrease if not "red-circled".

[7]A letter from Elliott to Peters addressing the details of the Director position stated, in relevant part,

"You will remain in [SERP] pending a review of plan participation guidelines which we expect to complete within 60 days. I should again point out that I believe you will not qualify for continued participation, however, we will not know until the study is completed. Should your participation be discontinued, your credited service and participation factor under the plan will be "frozen." When you choose to retire, benefits payable will be determined on the basis of plan provisions."

one direct age-related comment to employee was too isolated since no nexus to adverse employment decision was shown).

The foregoing demonstrates that the District Court did not "weigh" the evidence, but rather properly determined that there was not enough legally cognizable evidence for a jury to reasonably find for Peters on his claim of age discrimination.

### 4. *The District Court Did Not Err in Granting Summary Judgment to Defendant on Plaintiff's Constructive Discharge Claim.*

Peters next argues that the District Court erroneously applied federal law instead of Ohio law in granting Lincoln's Motion for Summary Judgment on his constructive discharge claim.

The District Court applied the two-prong test set forth in *Yates v. Avco Corp.*, 819 F.2d 630, 637 (6th Cir. 1987), a Title VII case, which requires courts to inquire into "the objective feelings of an employee." This requires a determination of whether "a reasonable person in the employee's shoes would have felt compelled to resign." *Id.* *Yates* further requires "some inquiry into the employer's intent and the reasonably foreseeable impact of its conduct on the employee." *Id.*

Ohio utilizes a slightly lower threshold. Under Ohio law, courts also apply an objective test in determining when an employee was constructively discharged, and like the federal courts, inquire "whether employer's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign." *Mauzy v. Kelly Servs., Inc.,* 75 Ohio St.3d 578, 588-9, 664 N.E.2d 1272, 1280-1 (1996). The Ohio Supreme Court, however, has not required satisfaction of a two-pronged test, i.e., it does not require an objective inquiry into the employer's intent.

Regardless of which law this Court applies, however, Peters would not succeed under either the federal or the Ohio standard because he failed to establish that he would feel

mattered in assessing Lincoln's satisfaction with his work-product.

Similarly, the court also considered evidence Peters offered purportedly as "direct" evidence of discrimination. As with the affidavits, the court examined the proffered evidence and concluded that it did not constitute legally cognizable "direct" evidence of discrimination. This evidence consisted solely of one comment made by Jay Elliott referring to Ellis Smolik as the "little old gray-haired man" that was "waiting to retire."

Contextually, there is nothing discriminating about that comment considering that Smolik was 74 years old and had announced his retirement plans. Under no reasonable circumstances would a jury find that this comment amounted to age-discrimination towards Peters.

Furthermore, as the District Court observed, the "gray haired" man comment was an isolated remark not made proximate in time to Peters' termination, nor was it directed at Peters specifically. In *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325 (6th Cir. 1994), we held that in age discrimination cases, statements allegedly showing an employer's age bias are to be evaluated by considering four factors: (1) whether the statements were made by a decision-maker or by an agent within the scope of his employment; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the act of termination. *Id*. at 1095. None of these factors is individually dispositive of age discrimination, but rather, they must be evaluated as a whole, taking all of the circumstances into account. *Id*. The record does not evidence any remarks being directed at Peters that would be related to Lincoln's decision-making process in terminating Peters as the Corporate Controller. *See also Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309 (6th Cir. 1989) (holding supervisor's age-related comment not directed at plaintiff insufficient to sustain age discrimination case); *Bolton v. Scrivner, Inc.*, 36 F.3d 939 (10th Cir. 1994) (holding

Peters would also be required to report to Elliott and Ray Vogt, the Vice President of Human Resources.

In the wake of what Plaintiff believed to be a "humiliating" and financially catastrophic demotion, Peters inquired as to other transfers or reassignments within the company. Upon learning that these positions would pay substantially less than the Director's position, Peters opted for "early retirement" from Lincoln.[8]

On June 23, 1998, Peters filed a Complaint in state court in Ohio alleging that in "forcing" him into early retirement, Lincoln discriminated against him because of his age in violation of Ohio Revised Code, § 4112. Peters also alleged Ohio common law claims of breach of contract, detrimental reliance, and breach of public policy. Lincoln subsequently removed the case to the United States District Court for the Northern District of Ohio on federal question grounds, contending that Peters' deposition testimony made clear that he was alleging violations of ERISA, thus providing a basis for removal under federal question jurisdiction.

Peters moved to remand the case back to state court. On July 9, 1999, the District Court denied Plaintiff's Motion to Remand. The court then subsequently granted Lincoln's Motion for Summary Judgment on the state law claims, and after Plaintiff stipulated to the dismissal of his ERISA claim, the Court entered a final Judgment.

---

[*See* J.A. at 77].

[8]After Plaintiff retired, Elliott decided to permanently replace him with the two individuals who had assumed Plaintiff's duties while he worked on the InfoSource project. Petrella assumed Plaintiff's duties as Corporate Controller and Bruno became Petrella's subordinate in the domestic business accounting area.

## III.  *ANALYSIS*

### A.  *STANDARD OF REVIEW*

The standard of this Court's review of the District Court's denial of Plaintiff's Motion to Remand is *de novo.  See Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999); *Ahearn v. Charter Township of Bloomfield,* 100 F.3d 451, 543 (6th Cir. 1996).  Similarly, the standard of review applicable to the District Court's decision to grant Defendant's Motion for Summary Judgment and to deny Plaintiff's Motion to Amend or Alter Judgment is *de novo.  Darrah v. City of Oak Park*, 255 F.3d 301, 305 (6th Cir. 2001); *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 554 (6th Cir. 1998).

### B.  *THE  DISTRICT  COURT  DID  NOT  ERR  IN DENYING   PLAINTIFF'S   MOTION   TO REMAND*

#### 1.  *Plaintiff's Deposition Testimony Constitutes an "Other Paper" Under 28 U.S.C. § 1446(b).*

28 U.S.C. § 1441 allows a defendant to remove an action from state to federal court when the federal district court has "original jurisdiction founded on a claim or right arising under" federal law. *See* 28 U.S.C. § 1441(b).  The procedural staple for determining the presence or absence of a federal question is the "well-pleaded complaint rule." *See Rivet v. Regions Bank of Louisiana*, 522 U.S. 470 (1998).

In his original Complaint, Peters alleged, in relevant part, that Defendant breached certain unspecified promises and representations and that, as a result of this alleged breach of promises and representations, he suffered damages. [*See* Complaint, ¶¶ 15-18].  The Complaint itself, however, does not specifically detail the promises, nor does it mention the Employment Retirement and Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*.  Peters, thus, argues that Defendant's removal of this action was improper.

While the Rules are silent as to timing matters with reply affidavits, precedent establishes that, in the face of new evidence, the court should permit the opposing party an opportunity to respond.  Here, Peters had an opportunity at the hearing as well as the entire week prior to respond but did not do so.  Therefore, no element of surprise exists in this case.

#### 3.  *The District Court Did Not Exceed the Scope of Its Duty Under Rule 56 and Erroneously "Weigh" Issues of Fact.*

In the face of a summary judgment motion pursuant to Rule 56 (c), the court's duty is to decide whether there is genuine issue as to material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden remains with the moving party to demonstrate that, in the wake of discovery and pleadings, the claims are factually unsupported and do not warrant a trial. *See id.*  While the court is required to view the facts in a light most favorable to the nonmoving party, this does not mean that the nonmoving party can create an issue of fact by filing an affidavit with contrary allegations. *See Street v. J.C. Bradford & Co.* 886 F.2d 1472, 1477 (6th Cir. 1989).

Peters argues that the lower court exceeded the scope of its discretion by weighing facts rather than merely determining whether there were sufficient facts for a factfinder to reasonably consider.  While the court should not weigh the evidence as a jury would, it must analyze the evidence enough to determine whether there is an issue that "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

In reaching its decision granting summary judgment to the Defendant, the District Court here considered the multiple affidavits Peters offered in support of his competency as Controller.  As discussed above, none of the evidence presented by Peters was from his current superiors. Therefore, the trial court was not "weighing conflicting reviews" by those in the position to evaluate Peters' competency.  Rather, the court simply properly noted that Peters offered no evidence from those whose opinion

Here, Peters' brief opposing summary judgment asserted that his competency in the Controller position evidenced pretext in Lincoln's reasons for replacing him. Peters' pretext allegations warranted a reply brief and supporting affidavits that would not have been filed with the original summary judgment brief. Fed. R. Civ. Pro. 6's requirement that cause be shown for affidavits not attached to the original motion, is designed to prevent the moving party from springing new facts on the nonmoving party "when it is too late for that party to contest them." *Republicbank Dallas v. First Wis. Nat'l Bank of Milwaukee*, 636 F. Supp. 1470, 1472 (E.D. Wis. 1986) (allowing defendant's reply brief and new affidavits and plaintiff's answer to defendant's reply brief). Furthermore, seven days elapsed between the date Lincoln filed Smolik's declaration and the hearing date. The surprise and resulting prejudice addressed in *Arco* were the result of filing on the hearing date, which failed to allow the plaintiff to examine and reply to the moving party's papers. *See Arco*, 754 F.2d at 410.

Peters also cites *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, 767 F. Supp. 1220, 1234-35 (S.D.N.Y. 1991), *rev'd on other grounds*, 967 F.2d 742 (2nd Cir. 1992), for the proposition that, in the event of a late affidavit filing, the court must give the opposing party an opportunity to respond. While the court did announce the necessity of notice and opportunity to respond, it also went on to dispel the plaintiff's assertion that Rule 6(d) renders *reply* affidavits untimely because they were not originally filed with the summary judgment motion. *See id.* at 1234. In accordance with Rule 6(d)'s language that, "when a motion is supported by affidavit, the affidavit shall be served with the motion," reply affidavits that respond only to the opposing party's brief are properly filed with the reply brief. *See id.* at 1234; *see also McGinnis v. Southeast Anestesia Assocs.*, 161 F.R.D. 41, 42 and n.1 (W.D.N.C. 1995) (allowing affidavits to accompany reply because they supported reply brief, not original motion). Smolik's affidavit supported Lincoln's reply brief, which contested issues brought to light in Peters' opposing brief.

A defendant's removal right, however, may extend beyond what is asserted in the plaintiff's complaint to the time when it may first be ascertained that the case is one which is removable. 28 U.S.C. § 1446(b) provides:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. . . .

Lincoln argues in this case that, while there is not a specific "ERISA claim" on the face of Plaintiff's Complaint, Peters' deposition testimony establishes that he is asserting a claim under ERISA.

Although this Circuit has not squarely addressed the issue of whether a deposition may constitute an "other paper" for purposes of Section 1446(b), the majority of courts that have considered this issue have answered the question in the affirmative, holding that a plaintiff's answers to deposition questions can constitute an "other paper" for purposes of the removal statute. *See Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072 (10th Cir. 1999); *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996); *Effinger v. Phillip Morris, Inc.*, 984 F. Supp. 1043 (W.D. Ky. 1997); *Haber v. Chrysler Corp.*, 958 F. Supp. 321, 326 (E.D. Mich. 1997); *Riggs v. Cont'l Baking Co.*, 678 F. Supp. 236 (N.D. Cal. 1988); *Zawacki v. Penpac, Inc.*, 745 F. Supp. 1044, 1047 (M.D. Pa. 1990); *Fisher v. United Airlines, Inc.*, 218 F. Supp. 223 (S.D.N.Y. 1963); *Fuqua v. Gulf, Colorado & Santa Fe Ry. Co.*, 206 F. Supp. 814 (E.D. Okla. 1962); *Gilardi v. Atchison, Topeka & Santa Fe Ry. Co.*, 189 F. Supp. 82 (N.D. Ill. 1960).[9]

---

[9] *But see, Mill Bern Assocs., Inc. v. Dallas Semiconductor Corp.*, 69 F. Supp. 2d 240 (D. Mass. 1999) (rejecting majority view and holding that a deposition is not an "other paper" under § 1446(b)); *Harrell v. Reynolds Metals Co.*, 599 F. Supp. 966 (N.D. Ala. 1985) (to like effect).

This court agrees with, and now joins, the majority of courts and finds that a plaintiff's responses to deposition questioning may constitute an "other paper" under Section 1446(b). The intent of § 1446(b) is to "make sure that a defendant has an opportunity to assert the congressionally bestowed right to remove upon being given notice in the course of the case that the right exists." *See Huffman v. Saul Holdings Ltd. P'ship,* 194 F. 3d at 1077 (quoting WRIGHT, MILLER ET AL., FEDERAL PRACTICE AND PROCEDURE, § 3732 at 306 (3d ed. 1998)). Unquestionably, information elicited during a deposition may serve that purpose. *Id.*

As the Fifth Circuit explained in *Addo v. Globe Life and Accident Ins. Co.*, 230 F.2d 759 (5th Cir. 2000),

Holding that a plaintiff's deposition testimony may be an "other paper" under § 1446(b) is consistent with the purpose of the removal statute to encourage prompt resort to federal court when a defendant first learns that the plaintiff is alleging a federal claim. Further, this holding discourages disingenuous pleading by plaintiffs in state court to avoid removal.

*Id.* at 762.

We find the Tenth and Fifth Circuits' reasoning persuasive. Therefore, we hold that if a defendant is able to ascertain for the first time from the plaintiff's deposition testimony that a case is removable, then a notice of removal is properly filed if it is filed within 30 days of that deposition.

### 2.  *Plaintiff's Deposition Testimony Provides a Basis for an ERISA Claim.*

Plaintiff does not dispute that Defendant Lincoln filed its Notice of Removal of this case within 30 days of the date of his deposition. He argues, however, that his deposition testimony does not make out a federal claim.

In Plaintiff's deposition, Lincoln asked a series of questions aimed at discovering the precise nature of the unspecified

836, 840 (S.D.N.Y. 1997) (relying upon unsworn documents, pursuant to § 1746, to grant summary judgment).

While otherwise compliant with § 1746, the Smolik document lacks the statute's required "date of statement." However, courts have held that the absence of a date on such documents does not render them invalid if extrinsic evidence could demonstrate the period when the document was signed. *See E.E.O.C. v. World's Finest Chocolate, Inc.,* 701 F. Supp. 637, 639 (N.D.Ill. 1988) (finding approximate date need merely be demonstrable to validate date-less document). The present situation bears more than sufficient evidence to demonstrate the "period" in which Smolik signed the document. Furthermore, subsequent to recognizing its error, Lincoln remedied the situation with a second February 23, 2000 affidavit, signed by Smolik, attesting to the date (January 17, 2000) the original affidavit was filed (i.e. the date of the reply brief). *See* J.A. at 839.[13]

In addition to Peters' facial attack of the Smolik document, he challenges its timing. Peters contends that the document was untimely submitted with Lincoln's reply brief, and that the District Court did not allow ample opportunity for him to respond. In support, Peters cites to the fairness and prejudice principles illustrated in *Cia Petrolera Caribe, Inc. v. Arco Caribbean, Inc.*, 754 F.2d 404, 409 (5th Cir. 1985). That case, however, is readily distinguishable from the instant case. The *Arco* case was concerned with the fairness of allowing defendants to file a reply brief with affidavits *on the day of the motion hearing*. The defendants in *Arco* could not show cause as to why the affidavits were not filed with their original motion for summary judgment. Compounding the problem was the fact that the material prejudiced the plaintiff by not allowing it the opportunity to rebut the defendants' new evidence. *See id*. at 409.

---

[13]The subsequent affidavit also identifies several conversations between Smolik and Peters' counsel that would likely be sufficient to evidence the "period" in which he signed the document.

### 2.   *The District Court Did Not Erroneously Rely on the "Smolik Document" in Granting Summary Judgment.*

Plaintiff also argues that the District Court committed reversible error in considering one particular piece of evidence, the "Smolik document," which was submitted by Lincoln with its reply brief. Captioned as an "affidavit," this document is a declaration by Ellis Smolik, Lincoln's former CFO, regarding his observations of Peters' inadequacies in the Controller position. Plaintiff first challenges the use of Smolik's declaration on "lack of authenticity" grounds because it was not notarized or dated. Peters further challenges the timing of submission of the document because it was filed with Lincoln's reply brief, rather than with its original Motion for Summary Judgment.

With respect to Plaintiff's first challenge of the Smolik document, Peters contends that, because the document was not notarized or dated, it is not a valid "affidavit." While an "affidavit" is required to be sworn to by the affiant in front of an "officer authorized to administer oaths," *see* Black's Law Dictionary 54 (5th ed. 1979), 28 U.S.C. § 1746 allows for "unsworn declarations under penalty of perjury" to support any matter that legally requires an affidavit to support it. According to § 1746, the declaration must comport to the following form: "I declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct. Executed on (date)." 28 U.S.C. § 1746 (2).

The Smolik document is composed in nearly identical form to all of Lincoln's supporting affidavits. The document opens with: "I, Ellis Smolik, hereby depose and swear that the following facts are true and correct based on my own personal knowledge." The affiant then swore, under penalty of perjury, and closed the document with his signature. Courts are generally consistent in validating documents that were sworn to under penalty of perjury, notwithstanding the fact that they were not notarized. *See e.g., Hameed v. Pundt*, 964 F. Supp.

"broken promises" for which Peters sought redress in his Complaint. Peters testified that he was suing Lincoln, in part, because the company breached a promise to continue his participation in its Supplemental Executive Retirement Plan ("SERP"). At his deposition, Peters testified as follows:

Q.  Were you ultimately taken out of the SER program or told that you would likely be taken out of it?

A.  I was initially told I was going to be out of the program.

Q.  *And so part of why you're suing is over the company's decision not to let you participate in the SER program?*

A.  *Very much so.*

[Plaintiff's Dep. pp. 39-40, J.A. p. 136 (emphasis added)].

While his statement at the deposition is not itself a "civil action" seeking to recover benefits under SERP, the District Court reasoned that the statement clarifies his Complaint allegations of unspecified "broken promises." The court rejected Plaintiff's argument that he is only seeking damages incidental to his wrongful separation from the company. The court further reasoned that because it must read the SERP plan, judge the validity of Plaintiff's claims, and resolve any issues concerning the interpretation of the plan, this ultimately constituted more than a mere determination of incidental damages.

We agree with the District Court. Peters' testimony clearly showed that he was claiming Defendant wrongfully denied him continued participation in SERP in "breach of its promises and representations." In a memo urging Peters to accept the demotion to Director of Benefits Accounting, Jay Elliott wrote, in pertinent part:

• You will remain in the Supplemental Executive Retirement Plan (SERP) pending a review of plan

participation guidelines which we expect to complete within 60 days. ***I should again point out that I believe you will not qualify for continued participation***, *however, we will not know until the study is completed.* Should your participation be discontinued, your credited service and participation factor under the plan will be "frozen." When you choose to retire, benefits payable will be determined on the basis of plan provisions.

[J.A. p. 77 (emphasis added).]

Notwithstanding the fact that Elliott told Peters he would not know for another 60 days whether it was certain that Peters would not qualify for continued participation in the SERP in the demoted position he was being offered, Elliott demanded that Peters respond to the offer of the Director's position within ten days. *Id.*

It is undisputed that the SERP is an employee benefit plan subject to the enforcement provisions of the Employee Retirement Income Security Act ("ERISA").[10] In *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 64-67 (1987), the Supreme Court held that the "complete preemption exception" to the "well-pleaded complaint rule" applies to claims arising under ERISA.[11] The Supreme Court

---

[10] Although the SERP is an unfunded plan designed "primarily for the purpose of providing deferred compensation to a select group of management or highly compensated employees,"[*see* Lincoln Electric Company Supplemental Executive Retirement Plan, J.A. pp. 60-75], the SERP is an employee benefit plan as defined by ERISA and is subject to the enforcement provisions of the statute, including section 1132(a). *Id.,* §§ 1.2, 2.1, 3.1, 3.2, 7.1. *See also, Kemmerer v. ICI American Inc.,* 70 F.3d 281, 286-87 (3rd Cir. 1995) (deferred compensation plans are exempt from much of ERISA's regulatory scheme, but are covered by the definitions and enforcement provisions of ERISA.)

[11] To determine whether a claim arises under federal law, a court, under the "well-pleaded complaint" rule, generally looks only to the plaintiff's complaint. *Gully v. First National Bank*, 299 U.S. 109 (1936);

---

situation, and Plaintiff has not offered any evidence to refute this complaint.

Plaintiff also argues that Defendant's "shifting" reasons indicate a sense of falsity in its proffered reason. Lincoln, however, did not "shift" or change its reasons; rather, various members of management merely cited different areas of deficiency that they deemed important. As indicated, these included Peter's lack of international experience, his failure to interact well with external auditors and his lack of leadership and communication skills. Thus, this does not amount to evidence from which a fact-finder could infer falsity of Lincoln's proffered non-discriminatory reason.

As the Supreme Court in *Reeves* was careful to note, a *prima facie* case coupled with evidence of a false proffered reason "may permit" a fact-finder to infer a discriminatory purpose, "although such a finding will not always be adequate to sustain" a finding of liability. *See Reeves*, 530 U.S. at 148. This is one such instance that the Supreme Court predicted was certain to occur, where "no rational fact-finder could conclude that discrimination had occurred." *Id.*

In the wake of Lincoln's 1992 downturn and subsequent overhaul of the entire management, Lincoln's explanation that the company was reorganizing its management in an effort to spur economic growth is not contradicted by any evidence that its treatment of Plaintiff was not part of this change. While this may have resulted in the incidental turnover of older employees, it does not mean that age motivated Lincoln's actions.[12]

---

[12] We note here that Plaintiff does not rely upon numerical or statistical evidence of a pattern or practice relating to termination of older employees to corroborate his position.

was not its true reason for replacing him, or that other non-protected-class employees who worked for the same supervisors were not fired even though they engaged in substantially identical conduct as he.

Peters' only evidence consists of affidavits from co-workers which do little, if anything, to rebut Lincoln's proffered legitimate business reason. These affidavits merely show that Peters had a good rapport with some of his subordinates, who generally tended to prefer his management style to that of Petrella and Bruno. They do not rebut the employer's proffered reasons for not retaining Peters in the Controller position, nor do they call into question the veracity of the employer's justification. In order to rebut, or undermine the credibility of, Lincoln's contentions that Peters lacked competency in vital areas, he would need to offer proof that he was indeed proficient in these areas according to the new management. As the District Court found, Peters' evidence merely illustrates a "clash of cultures" between the old and the new management styles.

Plaintiff purports to rebut Elliot's complaints about his qualifications to perform efficiently in the Controller position by introducing affidavits from Lincoln's former senior executives. Several subordinates further attested to Peters' communication skills and deemed him fully capable of performing the duties of Controller. Peters also offers evaluations by a former company president, who approved the high merit ratings Peters received as part of the employees' annual bonus review.

It is simply stating the obvious to observe that what may have satisfied one management regime does not necessarily satisfy its successor, and Plaintiff's proffered evidence does not serve to rebut Lincoln's **current** management's views regarding Peters' insufficient skills to continue performing in the Controller position. Elliott was specifically displeased with Plaintiff's failure to communicate with upper management to keep them abreast of Lincoln's financial

recognized that Congress' intent with certain federal statutes is to completely preempt state law and create federal jurisdiction under 28 U.S.C. § 1331. ERISA is one such statute. 29 U.S.C. § 1132(a) (the codified § 502(a) of

---

*Louisville & N.R. R. Co. v. Mottley*, 211 U.S. 149 (1908). If the complaint relies only on state law, the district court generally lacks subject matter jurisdiction and the action is not removable. That a defendant raises a federal defense to a state law claim, including a preemption defense, is immaterial for jurisdictional purposes. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 2430 (1987).

However, the Supreme Court has developed an exception to the well-pleaded complaint rule. If Congress intends that a federal statute "completely preempt" an area of state law, any complaint alleging claims under that area of state law is presumed to allege a claim arising under federal law. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987). The complaint may thus be removed to federal court and will be treated as alleging a federal cause of action, notwithstanding that on its face, the plaintiff's complaint alleges only a state-law cause of action.

"Complete preemption" applies only in the extraordinary circumstance when Congress intends, not merely to preempt a certain amount of state law, but also to transfer jurisdiction to decide the preemption question from state to federal courts. *See Metropolitan Life, supra*, 481 U.S. at 65-66 (finding a statement of such intent in the legislative history of ERISA). Without evidence of Congress's intent to transfer jurisdiction to federal courts, there is no basis for invoking federal judicial power. *Strong v. Telectronics Pacing Sys., Inc.*, 78 F.3d 256, 259 (6th Cir.1996); *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1253 (6th Cir. 1998).

Thus, we held in *Warner v. Ford Motor Co.*, 46 F.3d 531 (6th Cir. 1995), and recently re-affirmed in *Wright v. General Motors Corp.*, 262 F.3d 610 (6th Cir. 2001),

> [I]n order to come within the [complete preemption] exception a court must conclude that the common law or statutory claim under state law should be characterized as a superseding ERISA action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," as provided in § 1132(a)(1)(B).

*Warner v. Ford Motor Co,* 46 F.3d 531, 533-534.

ERISA), states, in relevant part, that a beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a). The purpose of § 502(a) is to provide beneficiaries with a cause of action to enforce their ERISA contracts. *See Warner v. Ford Motor Company*, 46 F.3d 531, 535 (6th Cir. 1995). *See also Martin v. General Motors Corp.*, 753 F. Supp. 1347, 1358 (E.D. Mich. 1991) (ERISA's civil enforcement provisions completely preempt state law causes of action "with respect to both persons who are actually 'participants' or 'beneficiaries' of employee benefits plans and persons who *claim* to be 'participants' or 'beneficiaries' of employee benefit plans." *Id.* (Emphasis in original.))

The District Court reasoned that Peters' deposition testimony established that Plaintiff was "seeking to clarify his rights to future benefits" under the SERP, and, therefore, his "breach of promises" claim was completely preempted under ERISA. We agree. Peters' claim is that he should be a participant in the plan but that the company denied him continued participation. His claim, thus, is one "to enforce his rights under the plan or to clarify his rights to future benefits under the terms of the plan."

Plaintiff argues that his breach of promises claim relates to ERISA too tenuously to create a federal cause of action. While courts have held that claims that merely peripherally "relate to" ERISA pursuant to its preemption clause in § 1144(a) do not create a federal cause of action, *see Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1275 (6th Cir. 1991), this is not such a case. Rather, as indicated, we find that this case arises under ERISA's civil enforcement provisions in Section 1132(a) of the Act. *See Warner v. Ford Motor Co.*, 46 F.3d at 533-34 (noting differences between claims arising under ERISA's § 1132(a) and those merely relating to ERISA under § 1144(a)).

Despite Lincoln's argument to the contrary, Peters established a *prima facie* case of discrimination. As the District Court noted, the plaintiff's burden at "step one" is relatively light under the *McDonnell Douglas/Burdine* paradigm. *See Barker v. Scovill, Inc.*, 6 Ohio St.3d 146, 451 N.E.2d 807 (1983); *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 2000). In *Cline* we cautioned that district courts must not use the "qualified" element of the *prima facie* case to heighten the plaintiff's initial burden. In an effort to ensure that the first two stages of the *McDonnell Douglas* inquiry remain analytically distinct, and that a plaintiff's initial burden not be too onerous, we held that the "qualified" prong of the *prima facie* case must be evaluated in light of the plaintiff's employment record "*prior to* the onset of the events that the employer cites as its reason" for its decision. 206 F.3d 662-3. We further instructed that the legitimate non-discriminatory reason offered by the employer at the second stage of the *McDonnell Douglas* inquiry may not be considered in determining whether the employee has produced sufficient evidence to establish a *prima facie* case. *Id.* at 660-1.

Peters met step one of the *McDonnell Douglas* test by offering evidence that 1) he was a member of a class protected under the Ohio statute 2) he was subject to an adverse employment action, 3) he was qualified for the Controller position from which he was removed, and 4) Lincoln replaced him in that position with two younger persons, Messrs. Petrella (age 37) and Bruno (age 29).

Peters having established a *prima facie* case, Lincoln proffered a non-discriminatory reason, supported by record evidence, for its action -- that Peters lacked leadership and communication skills, was unable to adequately interface with external auditors, and lacked international experience needed for the company's expanding international needs.

Lincoln having articulated a non-discriminatory reason for its action, Peters was required to advance some evidence demonstrating, at a minimum, that Lincoln's proffered reason

"may rely on the evidence. . . to establish the prima facie case and any inferences properly drawn therefrom." *Id.*

[J.A. pp. 28-29.]

However, in analyzing the evidence presented by Plaintiff, the court subsequently stated:

[P]laintiff has not "produced sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer*, 29 F.3d at 1083. **The plaintiff's burden at the second stage is to show "*both* that the reason was false, and that discrimination was the real reason."** *St. Mary's Honor Ctr. v. Hicks*, 125 L.Ed.2d 407, 422 (1993). . . . In *Manzer*, the Sixth Circuit clarified plaintiff's burden at this point, "Accordingly, once the employer has come forward with a nondiscriminatory reason for firing the plaintiff, we hold that the plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." 29 F.3d at 1083.

Plaintiff offers no evidence from which a jury could conclude that Lincoln Electric's explanation is false and that his age was the real reason for her [sic] termination. Most significant, Peters offers absolutely no evidence that age was the real reason for the termination.

[J.A. p. 30 (emphasis added.)]

The court then proceeded to examine the record and concluded that Lincoln's purported business reason for the action it took with respect to Plaintiff "is supported by the evidence," and Peters "has not rebutted the reasons articulated by Lincoln." *Id.* at 31. Notwithstanding what appears to be a misstatement of law on the District Court's part with regard to Plaintiff's burden at the pretext stage, the record establishes that Peters has not satisfied his burden under *Reeves*. An outcome consistent with *Reeves* is still dependent on Peters' *prima facie* case *and* his showing by a preponderance of the evidence that Lincoln's asserted reason was false.

For example, in a wrongful discharge claim where plaintiff's incidental damages award merely includes a loss of benefits under an ERISA-based plan, the state claim is not preempted. *See Ethridge v. Harbor House Restaurant*, 861 F.2d 139, 145 (9th Cir. 1988). In such a case, all that is needed is a simple mathematical calculation of benefits. The claimed damages, thus, relate only peripherally to the ERISA plan. Here, however, Peters' claim of "breach of promises" falls squarely within § 1132(a) as he seeks to "recover benefits due to him under the plan" or "clarify his rights to future benefits under the terms of the plan." It is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit. *Cromwell*, 944 F.2d at 1275.

For the foregoing reasons, we find that Plaintiff's third cause of action in which Plaintiff alleges a claim of breach of promises and representations on the part of Defendant Lincoln presents a federal question that is completely preempted under § 502(a) of ERISA. Therefore, removal of Plaintiff's Complaint based upon federal question jurisdiction was proper and the District Court properly exercised supplemental jurisdiction over Plaintiff's remaining state law claims pursuant to 28 U.S.C. § 1367.

### C. *THE DISTRICT COURT DID NOT ERR IN GRANTING SUMMARY JUDGMENT TO DEFENDANT*

Summary judgment is appropriate when there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The court's job is to decide whether a trial is required to allow a factfinder to determine genuine issues of fact that could be resolved in favor of either party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Plaintiff challenges the trial court's decision to grant summary judgment based on several different grounds.

**1.** ***The District Court's Decision Granting Summary Judgment to Defendant on Plaintiff's Age Discrimination Claims Comports with the Supreme Court's Ruling in* Reeves v. Sanderson Plumbing Products.**

Ohio Revised Code § 4112.02 renders it unlawful for an employer to discriminate against any person because of his age with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

In analyzing claims arising under OHIO REV CODE § 4112, Ohio courts have adopted the framework established in federal case law concerning Title VII and the Age Discrimination in Employment act ("ADEA"). *See, e.g., Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St. 2d 192, 196, 421 N.E.2d 128, 131 (1981); *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St. 3d 578, 582, 664 N.E.2d 1272, 1276 (1996); *Frank v. Toledo Hospital*, 84 Ohio App.3d 610, 615, 617 N.E.2d 774, 778 (1992). Thus, a plaintiff may establish a *prima facie* case of age discrimination under Ohio law by showing that he or she was a member of the statutorily-protected class, that he or she suffered an adverse employment action, that he or she was qualified for the position held, and that he or she was replaced by a person not belonging to the protected class or that comparable, non-protected persons were treated more favorably. *See Byrnes v. LCI Communication Holdings Co.*, 77 Ohio St.3d 125, 128, 672 N.E.2d 145 (1996); *Myers v. Goodwill Indus. of Akron, Inc.*, 122 Ohio App.3d 294, 302, 701 N.E.2d 738 (1997).

The employer may overcome the presumption inherent in the *prima facie* case by producing evidence of a legitimate, nondiscriminatory reason for the adverse employment action. *See Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d at 582. The plaintiff is then permitted to show that the employer's reason was merely a pretext for unlawful discrimination. *Id*.

upon his prima facie evidence, but must, instead, introduce additional evidence of [prohibited] discrimination.

*Id.* Our holding is bolstered by the Supreme Court's conclusion in *Reeves* that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148, 120 S.Ct. 2097.

263 F.3d at 600-02.

Turning to the District Court's summary judgment ruling in this case, to be sure, the language and structure of the court's opinion lend some credence to Plaintiff's contention that the District Court misconstrued his burden at the pretext stage of the *McDonnell Douglas* paradigm. The court initially set forth the Plaintiff's burden at this stage as follows:

Once the defendant articulates a legitimate non-discriminatory basis for its action, the ultimate burden of proof rests with the plaintiff to prove by a preponderance of the evidence that the articulated business reason was a pretext for discrimination. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981); *Cooley v. Carmike Cinemas,* [25 F.3d 1325,] 1329 [6th Cir. 1994]. That is to say, the plaintiff "must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994). The plaintiff can show that defendant's reasons were pretextual by showing that they were not really factors motivating the discharge, or if they were factors, by showing that they were jointly insufficient to motivate the discharge. *Ridenour v. Lawson Co.*, 791 F.2d 52, 56 (6th Cir. 1986) (quoting *La Montagne v. American Convenience Prods., Inc.*, 750 F.2d 1405, 1414-1415 (7th Cir. 1984)); *Manzer, supra*, 29 F.3d at 1084. As to the evidence introduced to show pretext, the trier of fact

*Id.* at 1084 (internal quotations and emphasis omitted). The first type of rebuttal, we said, consists of evidence that the reasons given by the employer simply did not happen. *Id.* The third type, "ordinarily consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Id.* The first and third types of rebuttals, we held, "are direct attacks on the credibility of the employer's proffered motivation for firing the plaintiff, and if shown, provide an evidentiary basis for what the Supreme Court has termed a "suspicion of mendacity." *Id.* It is thus clear, in light of *Reeves*, and *St. Mary's Honor Center*, as well as our opinion in *Manzer*, that whether the plaintiff has in fact presented evidence supporting each element of her prima facie case is material to the determination that the employer's articulated reason for the discharge is not credible.

Here, Toshiba articulated a non-discriminatory reason for firing Gray. . . . Gray, however, has produced no evidence casting doubt on the credibility of this articulated reason. Hence, there is no evidence that Toshiba's articulated reason has no basis in fact. Second, there is no evidence in the record that [the articulated reason] is not sufficient to warrant discharge under Toshiba's rules. . . .

\* \* \*

That leaves only the second *Manzer* option -- that the employer's articulated reason did not actually motivate the discharge. As to that type of rebuttal, we held,

[i]f the bare bones elements of plaintiff's prima facie case were sufficient to make this showing, . . . the entire 'burden shifting' analysis of *McDonnell Douglas* and its successors would be illusory. . . Accordingly, we hold that, in order to make this type of rebuttal showing, the plaintiff may not rely simply

Pretext can be established by (1) a direct evidentiary showing that a discriminatory reason more likely motivated the employer or by (2) an indirect evidentiary showing that the employer's explanation is not credible. *Carney v. Cleveland Heights-University Heights Sch. Dist.*, 143 Ohio App. 3d 415, 428, 758 N.E.2d 234, 245 (2001). However, "[m]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Carney,* 758 N.E.2d at 245. To avoid summary judgment, the plaintiff is required to produce evidence that the employer's proffered reasons were factually untrue. *Id.* (citing, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097 (2000).) Despite the shifting burdens of production, the ultimate burden of persuasion remains at all times with the plaintiff. *Id*. *See also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 2747 (1993).

Plaintiff Peters contends that the District Court in this case improperly required him to show "pretext plus," i.e., that Lincoln's adverse treatment was pretextual *and* that his age was the real reason for such treatment, in order to establish his age discrimination claim in this case. In support of his contention, Peters points to *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. at 143, in which the Supreme Court rejected the "pretext plus" evidentiary burden.

The Supreme Court granted certiorari in *Reeves* to resolve a conflict among the Circuits as to whether a plaintiff's *prima facie* case combined with sufficient evidence for a reasonable factfinder to reject the employer's nondiscriminatory explanation for its decision, is adequate to sustain a finding of liability for intentional discrimination. *See Reeves*, 530 U.S. at 140. The Fifth Circuit in *Reeves* had proceeded from the assumption that a *prima facie* case of discrimination, combined with sufficient evidence for the trier of fact to disbelieve the defendant's legitimate, nondiscriminatory reason for its decision, is insufficient as a matter of law to sustain a finding of intentional discrimination. *Id.* at 2108.

Clarifying its earlier decision in *St. Mary's Honor Ctr. v. Hicks*, *supra*, the *Reeves* Court held that, while the fact-finder's rejection of the employer's legitimate, nondiscriminatory reason for its action does not necessarily *compel* judgment for the plaintiff, it is nonetheless *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation. The Court, therefore, concluded that it is not always necessary for a discrimination plaintiff to introduce independent evidence of discrimination in addition to establishing the falsity of the employer's articulated reason for its action. 530 U.S. at 148. The Court explained:

> Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. . . . In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. . . . Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. . . . **Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false,** *may* **permit the trier of fact to conclude that the employer unlawfully discriminated.**

*Reeves*, *supra*, 530 U.S. 147-48 (citations omitted and emphasis added.)

The Court, however, was careful to point out that such a showing may not be sufficient in every case:

> This is not to say that such a showing by plaintiff will *always* be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation,

no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination has occurred. . . .

> Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.

*Id.* at 148-49.

We recently revisited the question of what is a discrimination plaintiff's evidentiary burden at the pretext stage in light of *Reeves* in *Gray v. Toshiba Am. Consumer Prod.*, 263 F.3d 595 (6th Cir. 2001), and concluded in that case that *Reeves* bolstered the rebuttal framework we established in *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994). In *Gray* we stated:

> This circuit. . . has held that "[t]he jury may not reject an employer's explanation [of its action] unless there is sufficient basis *in the evidence* for doing so." *Manzer*, 29 F.3d at 1083 (emphasis in original).

> To make a submissible case on the credibility of his employer's explanation, the plaintiff is required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge.