## OWNER–OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC., et al., Plaintiffs,

v.

## ARCTIC EXPRESS, INC., et al., Defendants.

### No. 97–CV–750.

United States District Court,
S.D. Ohio,
Eastern Division.

Oct. 22, 2003.

---

Helmer, Jr., Paul Bryan Martins, Helmer Martins & Morgan, Cincinnati, OH, Joyce E. Mayers, Cullen Law Firm, Washington, DC, for Plaintiffs/Counter Defendants.

A. Charles Tell, Mark Alan Johnson, Thomas Leslie Long, Baker & Hostetler, Columbus, OH, for Defendants/Counter Claimants.

## OPINION AND ORDER

MARBLEY, District Judge.

### I. INTRODUCTION

This case is a class action involving escrow funds that violated the truth-in-leasing regulations. This matter is before the Court on three Motions filed by the Defendants Arctic Express, Inc. ("Arctic") and D & A Associates, Ltd. ("D & A") and one Motion filed by the Plaintiffs. The Defendants' Motions are (1) a Motion for Reconsideration of the Court's July 11, 2003, Order Denying Defendants' Motion for Partial Summary Judgment; (2) a Motion to Decertify the Class; and (3) a Motion to Strike the Supplemental Declaration of Timothy Brickell. The Plaintiffs' Motion is for Summary Judgment on Damages.

For the following reasons, the Court **DENIES** the Defendants' Motion for Reconsideration; **DENIES** the Defendants' Motion to Decertify the Class; **DENIES** the Defendants' Motion to Strike; and **DENIES** the Plaintiff's Motion for Summary Judgment on Damages.

### II. BACKGROUND[1]

In June 1997, the Plaintiffs filed this action asserting, *inter alia*, that Arctic and

Paul D. Cullen, Sr., The Cullen Law Firm, Washington, DC, James Burdette

---

1. At this point in the litigation, the Court is intimately familiar with the facts of this case. For a more detailed recitation of the facts, refer to this Court's August 30, 2001, Opinion and Order granting the Plaintiffs' Motion for Partial Summary Judgment and denying the Defendants' Cross–Motion for Summary Judgment. *Owner–Operator Indep. Drivers Ass'n, Inc. v. Arctic Express, Inc.,* 159 F.Supp.2d 1067, 1068–71 (S.D.Ohio 2001). The facts stated here are taken in part from this Court's July 11, 2003, Opinion and Order

D & A had violated the truth-in-leasing regulations by failing to return escrow funds collected from independent truck drivers ("owner-operators") for the sole purpose of satisfying their maintenance obligations for equipment leased from D & A. On September 4, 2001, the Court certified a class, defined as follows:

> All independent truck owner-operators who have (1) entered agreements with Defendant D & A Associates, Ltd., which purport to lease, with the option to purchase, trucking equipment under the terms of D & A's equipment lease/purchase agreement, and (2) leased that equipment to Defendant Arctic Express, Inc. under the terms of Arctic's federally-regulated motor carrier lease agreement.

*Owner–Operator Indep. Drivers Ass'n, Inc. v. Arctic Express, Inc.,* Case No. C2: 97–CV–00750, 2001 U.S. Dist. LEXIS 24963, at *16 (S.D.Ohio. Sept. 4, 2001).

This Court has already determined that the nine cents per mile collected for the purpose of maintaining leased equipment was an "escrow fund" as defined by the truth-in-leasing regulations, and that this maintenance escrow fund was subject to the requirements of the federal leasing regulations. *See Owner–Operator Indep. Drivers Ass'n, Inc. v. Arctic Express, Inc.,* 87 F.Supp.2d 820, 830–31 (S.D.Ohio 2000). Further, the Court has concluded that the Defendants' failure to return the maintenance escrow funds to class members whose agreements did not run full term constituted an early termination penalty in violation of 49 C.F.R. § 376.12(k). *See Arctic Express,* 159 F.Supp.2d at 1076 (finding that the Defendants had "absconded with the Plaintiffs' escrow funds"). Having thus granted summary judgment to the Plaintiffs on the issue of liability, the sole issue remaining for trial is damages.[2]

On August 21, 2003, the Eighth Circuit issued an opinion, *Owner–Operator Independent Drivers Ass'n, Inc. v. New Prime, Inc.,* 339 F.3d 1001 (8th Cir.2003). The Eighth Circuit made two holdings that are relevant here. First, the court held that the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. §§ 14101–02 and 14704, under which the Plaintiffs bring their claims, may not be retroactively applied to agreements entered into before its effective date of January 1, 1996. *Id.* at 1007. Second, the court affirmed the denial of class certification in that case, finding that class issues did not predominate where each individual class member's account would need to be examined to determine damages, including set-offs. *Id.* at 1012.

In its March 3, 2000, Opinion and Order,[3] this Court relied on a previous Eighth Circuit decision in the *New Prime* case. *Arctic Express,* 87 F.Supp.2d at 824–25, 831–32 (relying on *Owner–Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc.,* 192 F.3d 778 (8th Cir.1999)).

denying the Defendants' Motion for Partial Summary Judgment.

**2.** The Court had previously, by Opinion and Order dated March 3, 2000, granted summary judgment to the Defendants on the Plaintiffs' claim for unauthorized deduction of purchase or rental payments under 49 C.F.R. § 376.12(i) while denying summary judgment to the Defendants on the Plaintiffs' claim for unauthorized deduction and non-return of escrow funds under 49 C.F.R. § 376.12(k). *Arctic Express,* 87 F.Supp.2d at 829, 831.

The Court also, by Opinion and Order dated January 28, 2003, granted the Motion of individual Defendants Richard Durst and Steven Russi to dismiss the claims against them for breach of fiduciary duty.

**3.** In this Opinion, the Court granted the Defendants' Motion for Summary Judgment as to one count of the Complaint and denied it as to the other count. *Arctic Express,* 87 F.Supp.2d at 832. The Court also denied the Defendants' Motion to Dismiss based on the doctrine of primary jurisdiction. *Id.*

The Court specifically noted that both the legal issues and the facts of the two cases were similar. *Id.* at 824–25.

The Defendants now seek to have this Court revisit two of its previous decisions on the basis of the new opinion in the *New Prime* case. First, the Defendants seek reconsideration of the Court's July 11, 2003, Opinion and Order denying the Defendants' Motion for Partial Summary Judgment. In that Motion, the Defendants sought summary judgment on the claims of all class members, including class representative Carl Harp, whose claims were based on lease-purchase agreements entered into with D & A before January 1, 1996. The Court denied the Defendants' Motion, holding that the provisions of the ICCTA relied upon by the Plaintiffs have no retroactive effect. The Court's reasoning, in essence, was that the ICCTA did not take away nor impair a vested right, nor create a new obligation or duty, nor attach a new disability, since it merely created a private right of action for violations that could already have been enforced in court by the Interstate Commerce Commission ("ICC"). This holding is contrary to the August 21, 2003, holding of the Eighth Circuit Court of Appeals that the ICCTA, by expanding the class of plaintiffs who may bring claims, altered the motor carriers' substantive rights, thereby having a retroactive effect.

The second decision that the Defendants seek to change is the Court's September 4, 2001, Opinion and Order granting the Plaintiffs' Renewed Motion for Certification of Class. The Defendants argue that the Eighth Circuit's decision upholding denial of class certification in a very similar case is directly on point and requires this Court to decertify the class here. The Defendants contend that here, as in *New Prime,* the existence of individual issues regarding proof of the Plaintiffs' damages, including determination of the balance of escrow accounts after offsets, establishes that common issues do not predominate within the meaning of Rule 23(b)(3).

Also before the Court is the Plaintiffs' Motion for Summary Judgment on the issue of damages. The Plaintiffs argue that they are entitled, as a matter of law, to recover the full amount deposited by class members in their maintenance escrow funds because the Defendants failed to comply with the regulatory requirement that they account for expenses deducted from those funds. The Plaintiffs contend that, as a result of the Defendants' wrongdoing, they are incapable of proving the amount of their damages with certainty. They argue that the Defendants must bear the burden of this uncertainty.

In the Plaintiffs' Motion for Summary Judgment on Damages, the Plaintiffs sought judgment against the Defendants in the amount of $16,805,388 plus interest of $6,035,196, for a total of $22,840,584. In submitting their Reply to Defendants' Opposition to Motion for Summary Judgment on Damages, the Plaintiffs amended their requested recovery to $16,464,876, with interest of $5,922,386, for a total of $22,387,262. In support of this emendation, the Plaintiffs submitted a Supplemental Declaration of Timothy Brickell. The Court, in its April 28, 2003, Order, had set July 31, 2003, as the deadline for class members to opt out of participation in this case. According to Brickell's Supplemental Declaration, the Plaintiffs' counsel, as of August 7, 2003, had received 13 executed exclusion forms. Brickell computed the total maintenance contribution of those 13 class members, which he then deducted from the original figure of $16,805,388 to arrive at $16,464,876. The Plaintiffs' Reply, filed on August 11, 2003, was the Plaintiffs' first submission to the Court following the July 31, 2003, deadline.

After receiving the Plaintiffs' Reply to Defendants' Opposition to Motion for Summary Judgment on Damages, the Defendants filed a Motion to Strike the Supplemental Declaration of Timothy Brickell. In support of that Motion, the Defendants argue that Local Rule 7.2(E) and Rule 6 of the Federal Rules of Civil Procedure require that any affidavit in support of a motion be submitted with the party's primary memorandum in support of that motion. The Defendants contend that affidavits attached to a reply memorandum are only permissible to the extent they rebut issues raised in opposition to the motion. Since the Supplemental Declaration of Timothy Brickell raised new issues, the Defendants argue, it should be struck.

## III. ANALYSIS

### A. Motion for Reconsideration

#### 1. *Standard of Review*

■ As a general principle, motions for reconsideration are granted if the moving party demonstrates: (1) a clear error of law; (2) newly discovered evidence that was not previously available to the parties; or (3) an intervening change in controlling law. *GenCorp., Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir.1999). Motions for reconsideration do not allow the losing party to "repeat arguments previously considered and rejected, or to raise new legal theories that should have been raised earlier." *Nat'l Metal Finishing Co. v. BarclaysAmerican/ Commercial, Inc.*, 899 F.2d 119, 123 (1st Cir.1990); *see also Am. Marietta Corp. v. Essroc Cement Corp.*, Case No. 01–3752, 59 Fed.Appx. 668, 671–72, 2003 U.S.App. Lexis 3211, at *9 (6th Cir. Feb. 19, 2003) (motion for reconsideration "should not be used to re-litigate issues previously considered").

#### 2. *Analysis*

The Defendants argue that the August 21, 2003, Eighth Circuit decision estab-lishes both a "clear error of law" and an "intervening change in controlling law." When this Court made its decision on the retroactive effect of the ICCTA, the only courts that had spoken on the issue were two district courts, both of which had held that the ICCTA could not be retroactively applied. According to the Defendants, now that a court of appeals has spoken on the issue, this Court, in the absence of any Sixth Circuit authority to the contrary, should reverse its earlier decision to bring the law of this case into conformity with the law as announced by the Eighth Circuit. The Plaintiffs argue, first, that this Court is not bound by the Eighth Circuit decision and, second, that this Court's analysis of the issue was correct, while the Eighth Circuit failed to apply properly Supreme Court precedent.

■ As a threshold matter, the Court finds that there has been no intervening change in controlling law. Had the Eighth Circuit opinion existed when this Court initially considered the issue of retroactive application of the ICCTA, then the Court could have considered that opinion as helpful guidance. Now that this matter is before the Court on a Motion for Reconsideration, however, the Court is only bound by an opinion that represents controlling law. This Court is only bound by decisions of the U.S. Supreme Court and the Sixth Circuit Court of Appeals. While this Court may, and often does, consider opinions of the other Courts of Appeals, those decisions are not binding and do not require reconsideration of an earlier decision of this Court.

■ The Court also holds that there was no clear error of law in its July 11, 2003, decision. Since the *New Prime* decision is not controlling law for this Court, the Defendants' only remaining arguments are attempts to re-litigate arguments already considered and rejected by this

Court. Both the Eighth Circuit and this Court, in considering the retroactivity of the ICCTA, considered the Supreme Court decision of *Hughes Aircraft Co. v. United States,* 520 U.S. 939, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997). At issue in *Hughes Aircraft* was an amendment to the False Claims Act. Prior to 1986, *qui tam* suits were barred if the information upon which they were based was already known to the government. A 1986 amendment, however, allowed *qui tam* suits even when the relevant information was already known to the government, except under very limited circumstances. *Hughes Aircraft,* 520 U.S. at 941, 117 S.Ct. 1871. In finding that the amendment to the False Claims Act altered the substantive rights of the parties by expanding the universe of plaintiffs who could bring claims against the defendant, the *Hughes Aircraft* Court noted that, prior to the promulgation of the new statute, the plaintiff's claim would have been completely barred. *Id.* at 950, 117 S.Ct. 1871.

■ This Court distinguished *Hughes,* finding that, rather than attaching a new disability, the ICCTA simply shifted the power to bring the Defendants into court from the ICC to the owner-operators themselves. The ICCTA did not alter motor carriers' substantive rights or expand the universe of plaintiffs that could bring claims. Prior to January 1, 1996, the Plaintiffs could have pursued their claims by complaining to the ICC. After January 1, 1996, public enforcement ceased, so owner-operators were required to bring actions themselves to vindicate their rights. The Defendants have done nothing to persuade the Court that its earlier reasoning was clearly erroneous. The mere fact that the Defendants now have a Court of Appeals decision in their favor is not sufficient to establish that this Court's reading of Supreme Court precedent is either wrong or unreasonable.

For the reasons stated, the Defendants' Motion for Reconsideration of this Court's July 11, 2003, Order denying the Defendants' Motion for Partial Summary Judgment is **DENIED.**

### B. Motion to Decertify

### 1. Standard of Review

According to the Defendants, the sole basis for their Motion to Decertify the Class is the decision of the Eighth Circuit in *Owner–Operator Independent Drivers Association, Inc. v. New Prime, Inc.,* 339 F.3d 1001 (8th Cir.2003). The Defendants' Motion is not one for decertification based on new developments in the case. *See Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."). Likewise, the Defendants' Motion is not based on a "showing that the grounds for granting certification no longer exist or never existed." *Reeb v. Ohio Dep't of Rehab. and Corr.,* 203 F.R.D. 315, 320 (S.D.Ohio 2001) (citing *Gen. Tel. Co.,* 457 U.S. at 160, 102 S.Ct. 2364). In other words, the Defendants do not claim that a change in the *case* warrants decertification of the class now, though class certification might have been proper at one point. Rather, the Defendants assert that the Eighth Circuit's *New Prime* opinion proves that this Court misinterpreted the law, and that class certification was never proper in this case. In the alternative, the Defendants appear to argue that the Eighth Circuit opinion represents controlling law, and that this Court is required to change its prior decision certifying the class in order to bring the law of this case into conformity with the law as announced by the Eighth Circuit. In essence, the Defendants' Motion is a Motion for Reconsideration of the Court's September 4, 2001,

decision granting class certification and of the Court's February 25, 2002, opinion denying the Defendants' Motion for Reconsideration of the Court's class certification decision. The Court will thus apply the standard set forth above for deciding a motion for reconsideration.

### 2. Analysis

■ As stated above, decisions of the Eighth Circuit are not controlling law for this Court. The Court is thus not required to change an earlier order based on an intervening decision of the Eight Circuit Court of Appeals. Therefore, the Defendants' only basis for seeking decertification of the class is its argument that the Court committed a clear error of law by certifying this class despite individualized damages issues, including the Defendants' purported claims against individual class members for set-offs.

The Defendants argue that this Court should follow the reasoning of the Eighth Circuit, which held, under similar circumstances in *New Prime*, that individual issues predominated over common issues because proof of damages would require the court "to examine each individual class member's account, including offsets, advances, and other items." *New Prime*, 339 F.3d at 1012. The Defendants contend that the existence of innumerable individualized questions that must be considered in determining damages in this case warrants decertification of the class.

According to the Plaintiffs, this Court has already correctly applied Sixth Circuit precedent in holding that individualized issues related to damages cannot destroy an otherwise cognizable class. The Plaintiffs contend that if individualized damages issues, including any speculative offsets claimed by the Defendants, become overwhelming, then the Court may utilize management tools, such as the appointment of a magistrate or special master to handle individualized damages determinations.

The Plaintiffs note that the Defendants are merely putting forth the same arguments that this Court has already rejected, both in its initial decision to certify the class and in its denial of the Defendants' Motion for Reconsideration of that decision.

This Court has already correctly applied Sixth Circuit law in twice rejecting the Defendants' argument that individualized damages issues in this case predominate over questions common to the class. In *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188 (6th Cir.1988), the Sixth Circuit discussed the prospect of individualized damages issues in the context of a mass tort case:

> The factual and legal issues of a defendant's liability do not differ dramatically from one plaintiff to the next. No matter how individualized the issues of damages may be, these issues may be reserved for individual treatment with the question of liability tried as a class action. Consequently, the mere fact that questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible.

*Id.* at 1196–97. In its September 4, 2001, decision, this Court applied *Sterling* in deriving two important propositions:

> First, the case dictates that even with the presence of variations in damage awards, as could result here, a class action is still appropriate. Second, even though Arctic and D & A's liability under § 376.12(k) has been established here, *Sterling* makes clear that a class action is still permissible.

*Arctic Express*, 2001 U.S. Dist. LEXIS 24963, at *30.

The Defendants have not established any clear error in the Court's determination of this issue. The mere fact that the Eighth Circuit, in addressing a similar set of circumstances, came out differently than

this Court is not sufficient to show that this Court clearly erred in its application of Sixth Circuit law. The Defendants' arguments on the merits are no different than the arguments they have already made to this Court. The Court rejected these arguments twice already, and sees no reason to accept them this time. The Defendants' Motion to Decertify the Class is therefore **DENIED.**

### C. Motion to Strike

#### 1. *Standard of Review*

The Defendants seek to strike the supplemental declaration of Timothy Brickell pursuant to Local Rule 7.2(E) and Rule 6 of the Federal Rules of Civil Procedure. Local Rule 7.2(E) provides

> When proof of facts not already of record is necessary to support or oppose a motion, all evidence then available shall be discussed in, and submitted no later than, the primary memorandum of the party relying upon such evidence. Evidence used to support a reply memorandum shall be limited to that needed to rebut the positions argued in memoranda in opposition.

S.D. Ohio Civ. R. 7.2(E). If evidence is unavailable at the time of the primary memorandum of a party, Local Rule 7.2(E) specifies a procedure that must be followed. S.D. Ohio Civ. R. 7.2(E).

▮▮▮ Rule 6 of the Federal Rules of Civil Procedure has been interpreted in a similar manner to Local Rule 7.2(E): Under Rules 6(b) and (d) of the Federal Rules of Civil Procedure, all affidavits in support of a motion must be submitted with the motion unless the court, *for cause shown,* permits a later filing. *RepublicBank Dallas, N.A. v. First Wis. Nat'l Bank of Milwaukee,* 636 F.Supp. 1470, 1472 (E.D.Wis.1986); *see Peters v. Lincoln Elec. Co.,* 285 F.3d 456, 476 (6th Cir.2002). The purpose of the Rule 6 requirement that cause be shown for affidavits not attached to the original motion is to prevent

the moving party from springing new facts on the nonmoving party when it is too late to contest them. *Peters,* 285 F.3d at 476 (quoting *RepublicBank Dallas,* 636 F.Supp. at 1472); *see McGinnis v. Southeast Anesthesia Assocs., P.A.,* 161 F.R.D. 41, 42 (W.D.N.C.1995) ("[T]he clear purpose of Rule 6(d) is to prevent unfair surprise by eleventh hour filings.") (citing *Orsi v. Kirkwood,* 999 F.2d 86 (4th Cir. 1993)).

#### 2. *Analysis*

▮▮▮ The Defendants contend that the Court should strike the supplemental declaration of Timothy Brickell because it introduces new evidence without rebutting positions argued by the Defendants in their memorandum in opposition and the Plaintiffs did not seek leave of Court to file it. The Plaintiffs counter that the supplemental declaration does not contain new facts, but rather evidences a ministerial adjustment derived by a simple mathematical calculation based on class members who have opted out of this action. The Plaintiffs contend that the purposes of Rule 6 would not be served by striking this affidavit, especially where the Defendants have ample time to respond to it and have been unable to make any showing of surprise or prejudice.

The most fundamental reason for denying the Defendants' Motion to Strike is that the supplemental declaration was not filed *in support of* either the Plaintiffs' Motion for Summary Judgment or their reply memorandum to that Motion. The fact that 13 class members have opted out of the case, or that the Plaintiffs are now seeking $340,511 less than they were seeking before learning of these opt-outs, does not make it any more (or less) likely that the Court will grant the Plaintiff's Motion for Summary Judgment on Damages. The Plaintiffs are not attempting to introduce

new substantive facts in support of their Motion but rather are merely making an anticipated ministerial adjustment, at a time when it is reasonable for them to do so. While the supplemental declaration was filed with the Plaintiffs' reply memorandum, the circumstance of its filing was a mere matter of convenience. The Plaintiffs made a logical and reasonable decision to inform the Court of the adjustment in damages in their reply memorandum, which was filed less than two weeks after the deadline for receipt of exclusion forms. The fact that the declaration, as a matter of convenience, was filed *with* the reply memorandum does not compel the conclusion that it was filed *in support of* that memorandum. In fact, the information contained in Brickell's supplemental declaration is not relevant to any legal argument made by the Plaintiffs, in either their reply memorandum or their original memorandum.

The Defendants' reliance on *Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.*, 754 F.2d 404 (1st Cir.1985), is unavailing, as *Arco* is easily distinguished. Indeed, the case here may be analogized to *Peters*, 285 F.3d at 476, where the Sixth Circuit found *Arco* to be inapposite because (1) *Arco* was concerned with the fairness of allowing movants to file a reply brief with affidavits on the day of the motion hearing; (2) the movants in *Arco* could not show cause as to why the affidavits were not filed with the original motion for summary judgment; and (3) there was no such surprise or prejudice in the case at bar, where the non-movant had seven days to examine and reply to the moving party's papers. Here, unlike in *Arco,* the supplemental declaration was filed well in advance of any hearing on the Motion, and the Defendants cannot establish that they have been prejudiced in any way, especially because the declaration does not relate to any substantive facts at issue in the Motion for Summary Judgment.

The purpose behind Rule 6, and presumably Local Rule 7.2(E) as well, is not implicated in this case. The purpose of Rule 6 is to prevent a moving party from unfairly surprising and prejudicing the non-movant by producing evidence of new, substantive facts at the last minute, when the opposing party will have no opportunity to respond. *See McGinnis,* 161 F.R.D. at 42 ("[A] party may not file a motion unsupported by any evidence only to spring the evidence on the opposing party on a later date."). The Defendants here have not in any way been prevented from addressing the Plaintiffs' Motion for Summary Judgment on its merits. The Defendants' Motion to Strike the Supplemental Declaration of Timothy Brickell is, therefore, **DENIED.**

### D. Plaintiff's Motion for Summary Judgment

#### 1. Standard of Review

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Where the movant produces evidence sufficient to present a *prima facie* case, the burden shifts to the opposing party to present evidence to show that a jury could reasonably rule in its favor. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir.1995). The non-moving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.,* 8 F.3d 335, 339–40 (6th Cir.1993). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could

return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The non-moving party, however, "may not rest upon its mere allegations ... but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir.1994). The mere existence of a scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 251, 106 S.Ct. 2505; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir.1995).

### 2. Analysis

In their Motion for Summary Judgment on Damages, the Plaintiffs seek damages of $16,464,876, plus interest in the amount of $5,922,386. The Plaintiffs have derived this number by adding up the amount collected in maintenance escrows from each of the 2,818 class members. The Plaintiffs contend that they are entitled to recover the full amount contributed into the escrow funds, rather than the net balance after withdrawal of maintenance expenses, because the Defendants' failure to provide a full accounting within 45 days of the termination of these accounts, as required by the regulations, makes it impossible to determine what the actual balance in these accounts was. The Plaintiffs argue that damages sustained by class members based on the Defendants' violation of 49 C.F.R. § 376.12(k) should be defined as the amount collected in escrow less only deductions reported to individual drivers within 45 days of termination. The Plaintiffs assert that, because the Defendants only kept track of maintenance expenses by truck unit number, rather than by owner-operator, accurate calculation of the net balance in any driver's maintenance account is impossible.

The Defendants did provide each driver with a final settlement statement within 45 days of termination; however, this statement only recorded the total in maintenance contributions accrued. The Defendants contend that it was their regular practice to mail a Maintenance Breakdown Summary that reported maintenance expenses to each individual driver, both periodically and at or near the termination of a lease. The Plaintiffs, however, contend that these Maintenance Breakdown Summaries only exist in a small number of drivers' files, and that the only evidence that they were provided to all drivers, or ever actually mailed to any driver, is a statement made on information and belief. Such a statement, the Plaintiffs assert, cannot suffice to establish a genuine issue of material fact. In general, the Plaintiffs maintain that the burden of any uncertainty in damages should be borne by the wrongdoer. They argue that they are only required to prove the amount contributed to the maintenance funds and that the Defendants must bear the burden of proving their maintenance expenses in order to obtain a defensive set-off.

The Defendants contend that the Plaintiffs have the sole burden of proving their damages, measured by the net maintenance fund balance of each maintenance escrow account at termination. Given the Maintenance Breakdown Summaries that were regularly provided to each individual truck driver, the net balance of each account is not uncertain and is capable of calculation. The Defendants also assert that there are several factual errors and

inconsistencies embedded in the Plaintiffs' calculations. First, the Plaintiffs' own expert issued a report concluding that the Plaintiffs' measure of damages was only $8,182,926. Second, the Plaintiffs' damages claim fails to account for class members who received a $2,000 starting credit towards their maintenance fees, or for class members who received a credit or refund of all or part of the balance of their maintenance funds. Third, at least some of the damages sought by the Plaintiffs consists of maintenance contributions made prior to the statute of limitations period. Finally, the Plaintiffs incorrectly compound interest.

■ The proper measure of damages is what is necessary to make the plaintiffs whole. *See* Dan B. Dobbs, *Dobbs Law of Remedies* § 3.1 (2d ed. 1993) ("[D]amages is an instrument of corrective justice, an effort to put the plaintiff in his or her rightful position."). The damages should be no more and no less than what is required to put the plaintiffs in the same position they would have occupied had the defendants' wrongdoing not occurred. *Id.* ("[T]he plaintiff should be fully indemnified for his loss, but . . . should not recover any windfall."). Had the Defendants here complied with the provisions of 49 C.F.R. § 376.12(k), then the Plaintiff owner-operators, within 45 days of the termination of their respective leases, would have recovered the net balance of their maintenance escrow funds. The measure of damages here is thus the unrecovered amounts remaining in the maintenance escrows at the time of termination for each class member. *See Owner–Operator Indep. Drivers Ass'n v. Arctic Express, Inc.*, 159 F.Supp.2d 1067 (S.D.Ohio 2001) (holding that Defendants had violated 49 C.F.R. § 376.12(k) by failing to return the amount remaining in escrow for owner-operators at time of termination).

■ The Plaintiffs' Motion for Summary Judgment on Damages fails for several reasons. The Plaintiffs correctly state the general legal proposition that a wrongdoer should bear the burden of uncertainty as to damages when the uncertainty is a result of the wrongdoer's own wrongful conduct. *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 265, 66 S.Ct. 574, 90 L.Ed. 652 (1946). The Plaintiffs have not cited to any legal authority, however, and this Court is aware of none, to support the novel proposition that a plaintiff may seek summary judgment on damages (in an amount far in excess of any reasonable estimate of damages actually suffered) when the defendant's wrongdoing makes certain determination of damages impossible. The Plaintiffs attempt to use this legal maxim as a sword, whereas every indication in the case law is that its purpose and utility is as a shield. *See Bigelow*, 327 U.S. at 266, 66 S.Ct. 574 (holding that "[t]he comparison of petitioners' receipts before and after respondents' unlawful action impinged on petitioners' business afforded a sufficient basis for the jury's computation of the damage, where the respondents' wrongful action had prevented petitioners from making any more precise proof of the amount of the damage"); *Confed. Tribes of the Warm Springs Reserv. of Or. v. United States*, 248 F.3d 1365, 1371 (Fed.Cir.2001) (trial court was wrong to refuse to award damages on the ground that any award would be speculative where uncertainty as to amount of loss should have been borne by wrongdoer); *Sir Speedy, Inc. v. L & P Graphics, Inc.*, 957 F.2d 1033, 1038–40 (2d Cir.1992) (jury's damages award should not have been set aside where defendant's own misconduct had prevented more precise computation of damages; "[t]he fact that the precise amount of damage may be difficult to ascertain is not fatal to the claim"); *Broan Mfg. Co. v. Associated Distribs., Inc.*, 923

F.2d 1232, 1235–36 (6th Cir.1991) (plaintiffs may only be precluded from recovery based on remote and speculative damages if it is the fact or existence of damages that is speculative, not if merely the amount of damages is uncertain); *Jay Edwards, Inc. v. New Eng. Toyota Distributor, Inc.,* 708 F.2d 814, 821 (1st Cir.1983) ("[W]here the defendant's wrongdoing created the risk of uncertainty [in proving damages], the defendant cannot complain about imprecision."); *Volasco Prods. Co. v. Lloyd A. Fry Roofing Co.,* 308 F.2d 383, 392 (6th Cir.1962) ("[P]laintiff is not to be denied damages simply because they cannot be computed with exactness."); *Iron Workers Local Union No. 17 Ins. Fund & its Trustees v. Philip Morris Inc.,* 29 F.Supp.2d 801, 821 (N.D.Ohio 1998) ("Plaintiffs are not barred from recovery where, as here, defendants' violation of RICO precluded the precise ascertainment of the amount of damages attributable to that misconduct by comparison to what would have occurred 'in its absence under freely competitive conditions.' ") (quoting *Bigelow,* 327 U.S. at 264, 66 S.Ct. 574); *Knutson v. Daily Review, Inc.,* 468 F.Supp. 226, 229 n. 4 (N.D.Cal.1979) (defendants should not profit from their wrongdoing by arguing that plaintiffs' computation of damages is less than exact and precise), *aff'd,* 664 F.2d 1120 (9th Cir. 1981). In general, plaintiffs have been allowed to use this idea—that a wrongdoer must bear the burden of uncertainty created by the wrongdoing—in defending against defendants who attempt to deny them damages (or have the jury's damages award set aside) based on the speculative or uncertain nature of those damages. It is a maxim rooted in ideas of estoppel, and this Court has seen no indication that it may be used offensively in the manner in which the Plaintiffs suggest.

The Plaintiffs need not prove the amount of damages with mathematical certainty. *Sir Speedy,* 957 F.2d at 1038;

*Massman Constr. Co. v. Tenn. Valley Auth.,* 769 F.2d 1114, 1123 (6th Cir.1985) (quoting *Wunderlich Contracting Co. v. United States,* 173 Ct.Cl. 180, 351 F.2d 956, 968–69 (1965)). The Plaintiffs, however, are required to set forth evidence sufficient to allow the Court to make a reasonable estimate of damages. *Sir Speedy,* 957 F.2d at 1038 ("In order to recover damages, a claimant must present evidence that provides the finder of fact with a reasonable basis upon which to calculate the amount of damages."); *Massman Constr. Co.,* 769 F.2d at 1123 ("It is sufficient if [the plaintiff] furnishes the court with a reasonable basis for computation, even though the result is only approximate."); *Volasco Prods.,* 308 F.2d at 392 ("[T]he evidence must furnish some approximation of the actual damages so that they may be determined with reasonable certainty."); *see Zazu Designs v. L'Oreal, S.A.,* 979 F.2d 499, 505 (7th Cir.1992) ("Although uncertainty created by wrongful acts does not insulate the wrongdoer from liability, 'people who want damages have to prove them ....' ") (quoting *Schiller & Schmidt, Inc. v. Nordisco Corp.,* 969 F.2d 410, 415 (7th Cir.1992)). The Supreme Court, in establishing the rule that a wrongdoer must bear the burden of the risk of uncertainty created by his own wrong, provided the following explanation:

> In such a case, even where the defendant by his own wrong has prevented a more precise computation, the jury may not render a verdict based on speculation or guesswork. But the jury may make a *just and reasonable estimate* of the damage based on relevant data, and render its verdict accordingly. In such circumstances, "juries are allowed to act on probable and inferential as well as (upon) direct and positive proof."

*Bigelow,* 327 U.S. at 264, 66 S.Ct. 574 (emphasis added) (quoting *Story Parchment Co. v. Paterson Parchment Paper*

*Co.,* 282 U.S. 555, 564, 51 S.Ct. 248, 75 L.Ed. 544 (1931)); *see also Zazu Designs,* 979 F.2d at 506 ("Allowance for uncertainty is one thing, and rank speculation another.") (citations omitted).

Although the Plaintiffs are not going to be punished for an inability to prove their damages with absolute certainty, where it was the Defendants' failure to keep proper records that is the cause of that uncertainty, the Plaintiffs must still prove their damages. Since the proper measure of their damages is the net balance in class members' maintenance escrow funds at the time of termination, the Plaintiffs must adduce evidence at trial sufficient to allow the fact finder to make a *just and reasonable estimate* of that sum. The amount for which the Plaintiffs seek summary judgment is not even a remote estimate of the amount of damages actually suffered by the Plaintiffs. The fact that the Plaintiffs' expert has produced a report in which he provides an estimate of the net amount of each driver's maintenance escrow is evidence that the Plaintiffs can make such proof at trial. The unrecovered net balance in the escrow accounts is the amount of damage suffered by the Plaintiffs as a result of the Defendants' wrongdoing. To allow the Plaintiffs to recover more than that sum would be to impose punitive damages on the Defendants. It would also provide the Plaintiffs with an unjustifiable windfall. *See LaSalle Talman Bank, F.S.B. v. United States,* 317 F.3d 1363, 1371 (Fed.Cir.2003).

Contrary to the Plaintiffs' assertion, the Plaintiff class members were damaged in the amount that they would have received had the Defendants complied with the truth-in-leasing regulations. In other words, they were damaged by the amount actually in the accounts, not by whatever amount the Defendants might have told them was in the accounts. The Defendants, as this Court has already held, violated Section 376.12(k) by not returning the amounts in the maintenance accounts. This Court has not held that the Defendants' violation included a failure to provide an accounting within 45 days of termination. The Plaintiffs thus are not entitled to additional damages based on any such failure to provide an accounting.[4]

■ At trial, the Plaintiffs might be entitled to favorable inferences based on uncertainties created by the Defendants' wrongdoing. *See, e.g., Donovan v. Bierwirth,* 754 F.2d 1049, 1056 (2d Cir.1985) ("Where several alternative investment strategies would have been equally plausible, the court should presume that the funds would have been used in the most profitable of these. The burden of providing that the funds would have earned less than that amount is on the fiduciaries found to be in breach of their duty. Any doubt or ambiguity should be resolved against them.") (as cited in *Confed. Tribes of the Warm Springs Reserv. of Or. v. United States,* 248 F.3d 1365, 1371 (Fed. Cir.2001)). However, they are not relieved of the responsibility of proving their damages. The Plaintiffs' Motion for Summary Judgment on Damages is therefore **DENIED.**

## IV. CONCLUSION

Based on the foregoing analysis, the Court **DENIES** the Defendants' Motion for Reconsideration; **DENIES** the Defendants' Motion to Decertify the Class; **DENIES** the Defendants' Motion to Strike the Supplemental Declaration of Timothy

---

4. The Court need not decide at this point whether the Defendants created a genuine issue of fact as to actual notification of at least some individual drivers of the net amount in their accounts, via Maintenance Breakdown Summaries, within 45 days of termination.

Brickell; and **DENIES** the Plaintiffs Motion for Summary Judgment on Damages.

**IT IS SO ORDERED.**